| 92 | 615 |
| 99 | 338 |

## Richmond.

LANCASTER AND OTHERS V. BARTON & LAMB AND OTHERS.

FEBRUARY 20, 1896.

1 SALE OF INFANTS' LANDS—*Affidavit to Bill.*—An affidavit annexed to a bill filed under section 2616 of the Code, "sworn to before me in my county aforesaid," is sufficient evidence that *the bill* was sworn to, and as the section does not require that the bill *shall show* that it was verified by the affidavit of the *plaintiff*, the facts may be shown by evidence *aliunde*, though the better practice is for the affidavit to show the fact.

2. SALE OF INFANTS' LANDS—*Parties.*—Where a father and mother hold lands in trust for their infant children, a bill filed in the names of the father and mother in their own right, and as trustees for such infants against the infants, is sufficient compliance with the statute (sec. 2616 of the Code) as to parties.

3. COMMISSIONER'S REPORT—*Hearing on.*—If a case is referred to a commissioner merely to take evidence and report upon the propriety of a sale of infants' land, his report is not one which the statute (sec. 3325 of the Code) requires to lie ten days before being acted upon.

4. SALE OF INFANTS' LANDS—*Construction of Will Under Which They are Held.*—The statute for the sale of infants' lands does not require as a pre-requisite that the will under which the lands are held shall be construed before a sale is ordered.

5. SALE OF INFANTS' LANDS—*Answer of Infant—Subsequent Majority or Marriage of Female Infant.*—Under the facts of the case at bar, it was not error that the female infant defendant, who had appeared and answered by guardian *ad litem* and also in proper person, was not proceeded against in proper person after attaining her majority, nor that her husband was not united as a co-defendant after her marriage with him.

6. INFANTS—*Right to Show Cause—What Cause May Be Shown.*—The right of an infant after he arrives at age to show cause against a decree which affects his interest is limited to causes existing at the time of the rendition of the decree, and does not extend to causes thereafter arising.

7. SALE OF INFANTS' LANDS—*Answer of Infant Over Fourteen Years of Age—
   Knowledge of Proceedings—Estoppel.*—Although the answer of an infant
   defendant over fourteen years of age to a bill for the sale of lands in
   which she has an interest was in fact neither signed nor sworn to by
   her, yet where the record shows an answer both signed and sworn
   to by her, and she has full knowledge of all the proceedings in the
   suit for the sale of the lands, and fully consents to a decree for the
   sale, and is regularly proceeded against as an infant on the record,
   and the sale is not made until eighteen months after she becomes of
   age, and she makes no objection to a confirmation of the sale, of
   which she has full knowledge, and about which she is consulted,
   such infant will thereafter be estopped from setting up against a
   *bona fide* purchaser of said land for value the fact that she had not
   signed and sworn to her answer.

8. SALE OF INFANTS' LANDS—*Sale Made More than Six Months After Date
   of Decree, and Confirmed.*—Section 3425 of the Code, with reference
   to judicial sales made after six months from the date of the decree
   therefor, and which have been confirmed, applies to sales of lands
   of infants made in suits properly brought for that purpose.

Appeal from a decree of the Circuit Court of Henrico
county, pronounced December 2, 1892.

*Affirmed.*

The opinion states the case.

*Jackson Guy* and *Pollard & Sands*, for the appellants.

*Christian & Christian*, for the appellees.

HARRISON, J., delivered the opinion of the court.

The questions raised by this appeal relate to certain irreg-
ularities in the proceedings instituted to sell the land of
infants.  These irregularities are now relied upon by appel-
lants as* ground for having the sale declared null and void,
and the land restored to them.

The proceeding in which the land was sold was a friendly
suit by Walter T. Hanes and Mattie D., his wife, the father

and mother of the infant defendants, in their own right, and as trustees appointed by the will of Garland Hanes to take charge of said land for their heirs. The defendants were the five infant children of plaintiffs, three of whom were over fourteen years of age.

These proceedings are complete and regular on their face, and all the necessary parties are before the court. The infant defendants are made parties by the bill. A guardian *ad litem* is appointed, who files an answer for them, and a separate answer in proper person. A joint answer is also filed, signed and sworn to by the three infants, who are over fourteen years of age.

A decree is entered describing each of these pleadings and bringing the cause on to be heard upon the bill and the several answers, and referring it to a master to take evidence, and report the value of the land, and whether the interests of the infant defendants would be promoted by a sale and re-investment of the proceeds in other real estate, in accordance with the prayer of the bill.

The evidence returned in response to this order was ample and convincing to satisfy the court that the interests of the infants would be greatly promoted by the sale prayed for. The testimony consisted of depositions of an uncle and uncle-in-law of the infants and their guardian *ad litem*. These witnesses were men of mature years and experience in business, who had been long acquainted with the land, which consisted of 40¼ acres, lying about one mile from the corporate limits of the city of Richmond. The land is shown to be without improvements of any sort, rapidly growing up in bushes and undergrowth, totally unproductive, and worth fifty or sixty dollars per acre.

It further appears that delinquent taxes had accumulated against it to a sum in excess of $400, which the trustees in control were unable to pay. The record shows that the

trustees, Walter T. Hanes and his wife, and their children were living in the county of Cumberland, and that the object of the sale of this land was to pay for a home in that county bought by the father for the benefit of his family, and to be held upon the same trusts as those under which the land to be sold was held.

The decree authorized the commissioner to sell either privately or publicly, and was rendered on the 19th day of February, 1887. After several efforts to sell publicly, without a bid, the commissioner, through a real estate agent in Richmond, received an offer of $100 per acre, made by Messrs. Barton & Lamb, the appellees, which was accepted, reported to the court, and confirmed without exception on the 7th day of December, 1888.

Mary E. Hanes, one of the infant defendants, arrived at full age on the 25th day of September, 1887, and intermarried with the appellant, William Lancaster, on the 14th day of December, 1887.

In August, 1890, the appellants, William Lancaster and Mary E., his wife, who before her marriage was Mary E. Hanes, and Martha V. Hanes, filed their bill, which they asked might be treated as an original bill in the nature of a bill of review, praying to have this sale set aside, and the property restored to them, on account of certain errors in the proceedings in which the sale was made.

The sufficiency of these alleged irregularities to vitiate the title of the purchasers is the question now to be considered.

The commissioner of sale, who was also counsel for the parties, was introduced as a witness by appellees, and his competency was excepted to at the time.

We do not understand this exception to be seriously relied on by appellants. At any rate, it is not well taken; no sufficient ground being assigned for sustaining the objection.

It is insisted that section 2616 of the Code provides that

the bill filed to sell infants' land shall be verified by the oath of the plaintiff; whereas the affidavit to the bill in this case simply recites: " Sworn to before me, at my county aforesaid, this 22d day of October, 1886 ; " and that this is not sufficient to show what is sworn to, or by whom. It may be remarked, first, that the statute does not say that the bill *shall show* that it was verified by the oath of the plaintiffs; it says the bill shall be verified by the oath of the plaintiffs. The certificate to this bill could not mean that anything else was sworn to but the paper to which it is affixed, and the appellants have proved by their own witness, one of the plaintiff trustees, that the bill was signed by each in his proper person, and duly sworn to by each before the officer making the certificate. So that requirement of the statute has been complied with.

The better practice, however, would be for the certificate to show on its face that the bill was sworn to by the plaintiffs, and not leave that fact to be supplied by evidence *aliunde.*

It is further insisted that the bill fails to make as defendants all those who would be his heirs or distributees if he (the heir or heirs) were dead, as required by statute. This property belonged, under the will of Garland Hanes, to the heirs of the plaintiffs, trustees, who brought the suit. They had five children, who were made parties defendant, and the bill expressly declared " that, in the event of the death of any of said infants, their surviving brothers and sisters, and your complainants (their father and mother), would be their only heirs at law." This is a full compliance with the statute. It states who would be the heir at law of each one of the defendants in case of death. No others are suggested as necessary parties, and it is difficult to understand who else could be regarded as necessary.

Another assignment of error is that the cause was impro-

perly heard upon the report of the master commissioner, which had not been returned and filed ten days before the hearing, as required by statute.

The cause was referred to the commissioner merely as a convenient mode of bringing before the court the necessary evidence upon which the decree of sale was to be based. The evidence returned with the report was all the court needed to act upon. The findings of the commissioner upon that evidence added nothing to its weight. Indeed, no report was necessary. It is the usual practice to take the evidence showing the propriety of the sale, and the court bases its decree for sale upon the evidence alone, and that is in effect what was done. The report in this case is not one that the statute contemplates should lie ten days before being acted upon.

It is further insisted as error that the court was not asked to construe the will of Garland Hanes before decreeing a sale of the real estate.

There is no pre-requisite in the statute requiring that the will under which infants hold land shall be construed before a sale is ordered, nor is there anything in the decree of sale to show whether the court did or did not construe the will. It does, however, clearly appear that the land was held in trust for the heirs of the complainants, and that all the parties having any interest in the trust subject were before the court as defendants.

It is further assigned as error that Mary E. Hanes (now Mrs. Lancaster) was not made a party, as an adult defendant, after she became of age, and that her husband, William Lancaster, was not made a party after his marriage.

It appears from the record that Mrs. Lancaster was fully informed of the pendency of this suit, and that it was instituted at her earnest request, in order that the money might be realized by the sale to pay for the home her father had bought for his family in Cumberland county. She was of

age on the 25th of September, 1887. The sale was not made until December, 1888. So that the disability of infancy had ceased, and the responsibilities of mature life had begun, nearly fifteen months before the sale was made. It was her duty, under these circumstances, to make the fact of her full age known to the court, and ask that her guardian *ad litem* be removed, and that she be substituted in her own right. Whatever interest she had in this property was her statutory separate estate. She was therefore not deprived of the power of acting for herself by the disability of coverture, and, not having acted for herself, she must be presumed to have been content that her guardian *ad litem* should continue to act for her.

Mr. Lancaster, her husband, was also fully cognizant of these proceedings, both before his marriage and afterwards. He was consulted frequently by the commissioner about the case, and recommended the acceptance of the bid of the appellees, and the confirmation of the sale to them. How was the court to know that this female defendant had married, unless informed of the fact? The marriage took place a year before the sale, and, if Mr. Lancaster was a proper party, it was his duty to have made known the fact of his marriage to the court, and to have asked to be made a party. This could have been done in the case of either Mrs. Lancaster or himself, on their own motion, or that of any party to the suit, but not on the motion of the purchasers, because they were not parties, until they made themselves *quasi* parties by their purchase.

It would be a fruitful source of wrong and injustice if a female defendant, marrying without the knowledge of the court, could vitiate all subsequent proceedings in the cause, until her husband chose to make the fact of his marriage known to the court.

It is further insisted that William Lancaster, one of the.

appellants, informed the purchasers, prior to the time that their last payment fell due, of his marriage with one of the parties in interest, and of the defects, as claimed, in the proceedings, and that, notwithstanding this information, they anticipated their last payment by five months, and received a deed from the court to the property.

Disregarding the information thus received, and making their last payment, and receiving a deed, neither helped the purchasers nor injured the appellants. If the latter had any sufficient ground before the last payment was made to have the sale set aside, they have it now. All of the purchase money is still under the control of the court, and the purchasers are in no better or worse position than they were before their last payment was made.

There is no plausible ground disclosed by the record for imputing to the purchasers the slightest fraud or impropriety. They heard of Mr. Lancaster for the first time on the occasion referred to by him, when he told them of his marriage. They had then been purchasers, with the sale confirmed to them, more than eighteen months. They had taken the precaution to have their title examined, before they bought, by experienced and able counsel, and it is not pretended that they ever heard of, or had reason to suspect, irregularity or defect in the proceedings, until just before the payment of their last note. Whether or not the imperfections in the record then suggested can affect their title are the matters now under consideration, and the fact that they made their last payment before appellants brought their suit to have those questions settled cannot affect the result one way or the other.

It is further insisted that the decree of sale, when rendered, and specially when executed, was against the interest of the infants. The foundation for this complaint is that since the decree of sale was made, and specially since it was executed,

the property has greatly enhanced in value, being now worth five times as much as it was when sold. The record shows that this enhanced value has been due, in a large measure, if not entirely, to the enterprise, labor, and expenditure of the purchasers, in opening up and building on other property adjacent thereto an attractive suburban addition to the city of Richmond. The cause, however, of this increased value is wholly immaterial.

This court has repeatedly held that " the right of an infant to show cause against a decree which affects his interests, after he arrives at age, must be limited to this extent: *to show cause existing at the rendition of the decree, and not such as arose afterwards.* If the decree is sustained and justified by the evidence then introduced, the infant will not be allowed, as against a *bona fide* purchaser, to go out of the record to show that, upon facts and events arising subsequent to the rendition of the decree, his interests were not promoted by the sale of his real estate. To establish a contrary doctrine would, in effect, defeat the very object of the law, and effectually prevent the sale of any real estate belonging to infants." *Walker* v. *Page,* 21 Gratt. 636 ; *Durrett* v. *Davis,* 24 Gratt. 302 ; *Zirkle* v. *McCue,* 26 Gratt. 517.

The evidence acted upon in this case was abundant to justify the court in decreeing a sale. Indeed, it was not only in the interest of the infants to sell, but, looking at it in the light of the evidence and the circumstances then surrounding the parties, it was necessary to protect their inheritance from waste and loss by the gradual accumulation against it of taxes which they were unable to pay.

Finally, it is urged by Mrs. Lancaster, as ground for invalidating the title of the purchasers, that although she was over fourteen years of age at the time the suit was instituted, yet as a matter of fact she never signed or swore to any answer.

As already seen, an answer was filed by her guardian *ad litem*, in his own name, and also one on her behalf, and it further appears on the face of the record that a joint answer with her brother and sister was filed, signed with her name and sworn to. The evidence discloses that the name of Mary E. Hanes (now Mrs. Lancaster) was signed to the personal answer in her absence and by her mother, and that it was never sworn to by Mrs. Lancaster. The explanation of this, given by the counsel who conducted the suit, is that he prepared the papers at his house, and, on account of the difficulty of getting good pens in the country, he prepared, as was his custom, the affidavits, and signed his name to them as commissioner in chancery, leaving nothing to be done except to attach the signature of the party; that when he went to the Hanes homestead he found that Mary E. Hanes had left home a few days before for West Virginia; that her mother proposed to sign for her; that he consented to this, intending to have it sworn to when appellant returned, but that, in consequence of family afflictions and many distractions, he lost sight of the fact that she had not sworn to the answer, and never recalled it until this suit was brought.

Mrs. Lancaster was as fully and regularly a party to the cause at every stage of the proceeding as an infant could be. As such the court treated her, and disposed of her interest. The purchasers examined the record and found that everything was apparent to give the court full jurisdiction for the transfer of her entire title.

It fully appears that Mrs. Lancaster knew all about the pendency of this suit; that it was brought at her earnest solicitation; that she was twenty-one years old in six months after the suit was brought, and some sixteen months before the sale was made; that during all that time she was fully informed of the decree for sale, and all that was done. When the offer for the lands was received, she was consulted, and

Opinion.

made no objection to its being accepted and reported to the court for confirmation. This conduct on her part estops her from now objecting to the sale upon the ground that she had not signed and sworn to her answer. She ought to have spoken at a time when innocent parties would not have been prejudiced thereby, and when in conscience she ought to have made her claim known. Not having done so, she ought to be silent now, when every consideration of good conscience requires that she should be.

In *Hill* v. *Woodward*, 78 Va. 765, 775, in which the record showed that the party had not been served with process at all, but in which the party had stood by and seen the property sold without making objection to the sale, the court uses this language: " By her conduct, as disclosed by the record, the appellant is estopped from questioning the verity of the record. Her evident knowledge of the pendency of this suit and its object, her seeming acquiescence, and her delay and refusal to speak, though not served with notice in the regular way, makes it proper for her to remain silent, now that others have acquired rights while she was standing by in silence, if not in actual acquiescence. It was not only competent for her to speak in time, and be made a party, if she had not been, but it was her duty."

We have endeavored to show that, upon their merits, the objections made by the appellants to the title. of the purchasers are not tenable, and cannot be sustained. But even if they were well founded, they cannot operate to the prejudice of the purchasers, inasmuch as the sale was made more than six months after the date of the decree of sale, and was duly confirmed. The rights of the parties are now fixed, and the purchasers fully protected by section 3425 of the Code, which provides as follows :

" If a sale of property be made under a decree or order of court, after six months from the date thereof, and such sale be confirmed, though

such decree or order be afterwards set aside, the title of the purchaser at such sale shall not be affected thereby."

*Cooper* v. *Hepburn*, 15 Gratt. 551 ; *Dixon* v. *McCue*, 21 Gratt. 373, 380 ; *Quisenberry* v. *Barbour*, 31 Gratt. 491, 500 ; *Garland* v. *Pamplin*, 32 Gratt. 305, 320.

In the case of *Cooper* v. *Hepburn*, where a purchaser filed his petition in a pending suit to have his purchase set aside and annulled, upon the ground, among others, that one of the infant defendants was over fourteen years of age when the bill was filed, and had not filed an answer, Judge Daniel, in disposing of that irregularity in the proceedings, says : " The most he, the purchaser, could, in accordance with principles repeatedly announced by this court, properly ask, under the circumstances, was that he should be protected against any future assertion of claim by the infant over fourteen years of age." He then proceeds to consider whether the purchaser would be in any danger, by reason of the failure of the infant to file an answer, and holds that he would not be ; that, independently of the statute, the infant would not be allowed, because of this defect in the proceedings, to disturb the sale, being before the court by guardian *ad litem ;* and then adds : " *Be this as it may, the provisions of the statute do, I think, afford the purchaser full protection.*"

In the case at bar the appellees are *bona fide* purchasers for value, and this effort to impeach the validity of their title illustrates the wisdom of the statute they invoke for their protection.

There is no error in the decree appealed from, and it is affirmed.

*Affirmed.*