**Juanita Tavia Yates PAYNE, Ella Mae Yates Dancy, and Elizabeth Jane Yates, Plaintiffs,**

v.

**CONSOLIDATION COAL COMPANY, Defendant.**

**Civ. A. No. 81–0056–A.**

United States District Court,
W. D. Virginia,
Abingdon Division.

May 7, 1982.

Roger W. Mullins, Donald R. Mullins, Bluefield, Va., for plaintiff.

James P. Jones, Bristol, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

## I. INTRODUCTION

The plaintiffs in this case are attempting to collaterally attack and have set aside a decree entered by the Circuit Court of Tazewell County, Virginia which ratified, approved, and confirmed a proposed lease of infants' mineral rights to the defendant, Consolidation Coal Company. The plaintiffs have moved for summary judgment on the ground that the decree entered by the state court, as well as the lease of the mineral interests, are void because of failure of the parties to comply with the then-applicable Virginia statutes. It appearing that both parties have thoroughly briefed the issue, and the Court having held an evidentiary hearing, this matter is ripe for disposition. Jurisdiction of the Court is based upon the provisions of 28 U.S.C. § 1332(a).[1]

## II. FACTS

The facts have been agreed upon through a Stipulation of Facts introduced at the evidentiary hearing of August 17, 1981, as well as a copy of the relevant portion of the state court file and the mineral lease in question, which are made a part of the record in this case. As shown by these facts, S. A. Yates died intestate as to two tracts of land in Tazewell County, Virginia, leaving as heirs his children Katherine, Frank, Ida, Robert, Pearl and Ella Mae Yates Murray and John Bunyon Yates. All of the children thereafter conveyed their interests in the property to John Bunyon Yates, although Ella Mae Yates Murray in her conveyance reserved her mineral rights. In 1963, when John Bunyon Yates died intestate, he thus owned a six-seventh interest in the mineral rights to the property which descended to his heirs Juanita Tavia Yates, Ella Mae Yates and Elizabeth Jane Yates, the plaintiffs in the present action. The one-seventh interest in the mineral rights owned by Ella Mae Yates Murray descended upon her death to Thomas Aaron Murray (a one-fourteenth interest) and to her grandchildren Chadwick Leroy Murray and Stacy Leonard Murray (an undivided one-fourteenth interest).

---

1. This action is between the plaintiffs, citizens of the States of North Carolina and Virginia, and the defendant, a corporation organized and incorporated in the State of Delaware and having its principal place of business in the State of Pennsylvania. The amount in controversy exceeds $10,000.00 exclusive of interest and costs.

On October 17, 1968, Thomas Aaron Murray, Consolidation Coal Company, Chadwick Leroy Murray and Stacy Leonard Murray, by their next friend and mother, Cecilia Bandy Murray, filed suit in the Circuit Court of Tazewell County, Virginia, against Juanita Tavia Yates, Ella Mae Yates, and Elizabeth Jones Yates, to have ratified, approved, and confirmed a proposed lease of the mineral interests belonging to the infant defendants. Juanita Tavia Yates is now Juanita Tavia Yates Payne; Ella Mae Yates is now Ella Mae Yates Dancy; and Elizabeth Jones Yates was a misnomer of Elizabeth Jane Yates, all of whom are plaintiffs in the present suit.

The mother of the plaintiffs, Thelma B. Yates, was living at the time the suit was instituted on October 17, 1968, but was not named as a party plaintiff or defendant. She was, however, aware of the chancery proceedings as evidenced from her deposition in the matter taken on October 26, 1968. Further, in 1970, through an attorney, the mother petitioned the court in the same suit to be allowed to draw on the royalties which had been paid to the court's general receiver for the benefit of her infant daughters.

By decree of November 7, 1968, the Circuit Court of Tazewell County, Virginia found the lease of the mineral interests to Consolidation Coal Company to be in the best interest of the infant parties, and thereby ordered the ratification, approval and confirmation of the lease to be executed by a Special Commissioner. The lease was thereafter executed on November 8, 1968.

## III. APPLICABLE LAW AND ISSUES

In 1968, the requirements for initiating an action to sell, encumber, or lease infants'

lands were incorporated in Va.Code § 8–675 et seq.[2] Under Section 8–675, if an interested party or guardian of an infant thought that the interest of the infant would be promoted by the sale or lease of coal on or in real estate held by the infant, then the interested party or guardian could file a bill in equity to obtain the sale or lease. Section 8–676 is one of a number of other sections which provided the subsequent procedure and established criteria for the Circuit Court to utilize in determining the propriety of the lease. It read, as follows:

> § 8–676. Verification and parties defendant to such bill —Such bill or petition shall be verified by the oath of the plaintiff, and there shall be made parties defendant, when not plaintiff, to such bill or petition the infant or insane, incapacitated or ex-service person, the beneficiary in such trust, the trustee, the executor, the administrator with the will annexed, the curator, all those who would be the heirs or distributees of the infant, insane, incapacitated or ex-service defendant or defendants, if all such defendants were dead, the guardian or any infant defendant, the committee of any insane defendant, the guardian or committee of any incapacitated defendant, the trustee or any such ex-service person who is defendant, if any such guardian, committee, or trustee has already been appointed, and all others interested.

Therefore, in order to file a bill of complaint seeking the lease of infants' lands, it was necessary that "those who would be heirs or distributees of the infant" be included as necessary party defendants to the bill of complaint.[3]

> § 64.1–9. Descents from infants in certain cases.—If an infant die without an heir in the first three classes of descendants under § 64.1–1, having title to real estate derived by gift, devise or descent from one of his parents, the whole of it shall descend and pass to his kindred on the side of that parent from whom it was derived if any such kindred be living at the death of the infant. If there be none such, then it shall descend and

2. See Va.Code Ann. § 8–675, et seq. (Repl.Vol. 1957).

3. In order to identify the heirs and distributees of an infant, it is necessary to look at the laws of intestate succession existing on October 17, 1968, the date the bill of complaint was filed in the Tazewell County Circuit Court. After October 1, 1968, the statute of descents for infants was contained in Va.Code § 64.1–9, as follows:

The parties have stipulated that the mother of the infants, Thelma Yates, was living at the time the suit was instituted on October 17, 1968, but was not named as a party plaintiff or defendant. Although the plaintiffs raise many arguments in support of their motion for summary judgment, resolution of only two issues is necessary for disposition of this case:

(1) Whether the Circuit Court decree and subsequent lease are void because Thelma Yates was not named a formal party to the Bill of Complaint, and

(2) Whether the plaintiffs' present action is barred by the equitable doctrine of laches and/or the applicable statute of limitations.

## IV. DISCUSSION

For the foregoing reasons, the Court concludes that both of these questions should be answered in favor of the plaintiffs and that the lease to the defendant, Consolidation Coal Company, is null and void.

(a) *Failure to join the necessary parties.*

Initially, the Court recognizes the strict application which the Virginia courts have heretofore required of the statutes prescribing the procedure for sale of infants' lands. "It is well established in Virginia that courts of equity have no inherent power to sell the lands of infants and that their power to sell or exercise control over such lands arises solely by legislative grant." Note, *Sale, Lease and Encumbrance of Infants' Lands in Virginia*, 47 Va.L.Rev. 534, 534 (1961). Therefore, the exercise of such power cannot extend beyond the limits imposed by the statute.

*Newman v. Light*, 152 Va. 760, 768, 148 S.E. 818, 820 (1929). This is not to say that the statutes may never receive a liberal construction. *See Rhea v. Shields*, 103 Va. 305, 309, 49 S.E. 70, 71 (1904). However, such a construction does not allow a method of sale which is not in "substantial compliance" with the statute authorizing the sale. *Brenham v. Smith*, 120 Va. 30, 33, 90 S.E. 657, 658 (1916); Note, *Sale, Lease and Encumbrance*, 47 Va.L.Rev. at 535–36. Since the statute creates the special jurisdiction of the state court in these matters, a lack of substantial compliance makes a proceeding under these statutes void *ab initio* and *in toto* because there is a want of jurisdiction. *See Brenham v. Smith*, 120 Va. at 33, 90 S.E. at 657 (1916); *Coleman v. Virginia Stave & Heading Co.*, 112 Va. 61, 70 S.E. 545 (1911).

Accordingly, the Virginia Courts have consistently stated that the presence of the necessary parties required by Section 8–676 is jurisdictional and a decree rendered in their absence is void as to the infants whose interests are affected by the decree. *See Newman v. Light*, 152 Va. at 768, 148 S.E. at 820; *Gee v. McCormick*, 142 Va. 173, 184, 128 S.E. 541, 545 (1921); *Parker v. Stephenson*, 127 Va. 431, 104 S.E. 39 (1920). The presence of the prospective heirs or distributees is required so that

the infant parties may have the benefit of the oversight and protection of the [prospective heirs], and to prevent unfair advantage being taken, either of the real owners, the infants, or of the possible and contingent owners, the heirs and distributees. . . .

*Newman v. Light*, 152 Va. at 769, 148 S.E. at 820 [*quoting from* Lile's Equity Pleading

---

pass to his kindred on the side of the other parent. (Code 1950, § 64–9; 1968, c. 656) The course of descents under § 64.1–1 provided, in pertinent part:

§ *64.1–1. Course of descents generally.* —When any person having title to any real estate of inheritance shall die intestate as to such estate, it shall descend and pass in parcenary to such of his kindred, male and female, in the following course:

First. To his children and their descendants.

Second. If there be no child, nor the descendant of any child, then the whole shall go to the surviving consort of the intestate.

Third. If there be none such, then to his or her father and mother or the survivor.

As the parties in this case correctly recognize, after October 1, 1968, Thelma Yates was an heir to the property held by her infant daughters, plaintiffs in this suit. Record, *Plaintiffs' Memorandum of Law* at 6; Defendant's *Memorandum on Behalf of the Defendant* at 2.

and Practice 159 (1919)]. As one commentator has pointed out, there are two reasons why it is felt that the presence of the prospective heirs of the infant will offer protection for the infant:

> First, it is presumed that the heirs hold some affection for the infant. Second, since the heirs have a personal contingent interest in the land being sold it is concluded that those who may become owners of the land or its proceeds will see that the land is not sacrificed by one who is recreant to the trust imposed upon him.

Note, *Sale, Lease and Encumbrance*, 47 Va. L.Rev. at 537–38. *See also Gee v. McCormick*, 142 Va. at 185, 128 S.E. at 545; Sutherland, *Suits Involving the Sale of Infants' Lands—The Need for Legislative Action*, 51 Va.L.Rev. 355, 356 (1965).[4]

Since the parties agree that Thelma Yates was the living heir of the infants and that she was not joined as a party, it would seem to follow that there was not substantial compliance with Section 8–676. However, the defendant, relying upon *Lancaster v. Barton*, 92 Va. 615, 24 S.E. 251 (1896), contends that there was substantial compliance with the statute because "[s]he was fully aware of the proceedings." Record, *Memorandum on Behalf of the Defendant* at 3. However, the Court finds this argument, as well as *Lancaster*, to be unpersuasive.

In *Lancaster*, suit was filed pursuant to the statute to sell the land of the infant defendants held in trust by the plaintiff parents. A guardian *ad litem* was appointed for the infants, and the Court entered a decree authorizing the sale of the lands held in trust. Seven months later, before the sale was consummated, one of the children reached the age of majority and married William Lancaster. After the sale was completed, the Lancasters sought to have it set aside on the ground that they should have been made parties to the proceeding.

Refusing to find the sale void, the Supreme Court of Appeals found that Mrs. Lancaster was estopped from objecting to the sale because

> [i]t appears from the record that Mrs. Lancaster was fully informed of the pendency of this suit; that it was instituted at her earnest request . . . . It was her duty, under these circumstances, to make the fact of her full age known to the court, and ask that her guardian *ad litem* be removed, and that she be substituted in her own right . . . . [N]ot having acted for herself, she must be presumed to have been content that her guardian *ad litem* should continue to act for her.
>
> Mr. Lancaster, her husband, was also fully cognizant of these proceedings, both before his marriage and afterwards. He was consulted frequently by the commissioner about the case, and recommended the acceptance of the bid of the appellees, and the confirmation of the sale to them.

*Id.* at 620–21, 24 S.E. at 253. *See* Note, *Sale, Lease and Encumbrance*, 47 Va.L.Rev. at 543. From this, the defendant argues that the plaintiffs are estopped from collaterally attacking the lease because the prospective heir, their mother, was fully "informed" and "cognizant" of the proceedings.

This argument is untenable for numerous reasons. First, it is well settled in Virginia that a proceeding is not subject to collateral attack upon a defect which does not appear in the record of the original proceeding. *See Farant Inv. Corp. v. Francis*, 138 Va. 417, 122 S.E. 141 (1924). And it is apparent from the original record in this case that Thelma Yates was a necessary party since, as the living mother of the infant defendants, she was a prospective heir of the lands. *See* note 3 *supra*. In *Lancaster*, the marriage of the infant and William Lancaster was not apparent from the record of the original proceeding, and the Virginia court declined to base the validity of the proceed-

---

**4.** While one commentator has questioned the necessity of joining all heirs to such a suit, the same commentator recommends that the members of the infants' immediate family and those who have concern for the infants' welfare continue to be required as necessary parties. Sutherland, 51 Va.L.Rev. at 365.

ings upon the questionable actions by an infant defendant over whom neither the plaintiff nor the *innocent* purchasers had any control. 92 Va. at 620–21, 24 S.E. at 253. However, it is apparent from the original record in this case that Thelma Yates was a prospective heir and necessary party, *see* note 3 *supra*, and Consolidation Coal Company, unlike the purchasers in *Lancaster*, could on its own motion have brought Thelma Yates as a party before the state court. Therefore, *Lancaster* merely reaffirms other cases of the Virginia Supreme Court which consistently require strict observance by the plaintiff of the statutory requirements. *See* pp. 953–954 *supra*.

Furthermore, Thelma Yates was never a party, in form or substance, in the 1968 proceedings. When asked during her deposition about the propriety of the lease, she was ignorant of the extent of the estate or whether the sale was in the best interest of the children. Record, Deposition of Thelma Yates at 4–6. Similarly, neither the state court record nor any evidence presented to this Court indicate that Thelma Yates or the infants actively participated in encouraging, recommending, or opposing the lease before the state court. In *Lancaster*, the infant and her husband were active participants, fully informed of the proceeding, and recommended, and reported to the court for, confirmation of the eventual sale. 92 Va. at 620–21, 24 S.E. at 253.

Accordingly, the court cannot find that the plaintiffs are estopped from asserting the invalidity of the lease simply because Thelma Yates, an unnamed necessary party, testified in depositions taken during the proceeding.[5]

(b) *Other Defenses*

■ As a final matter, the Court recognizes that the defendant has alleged in its Amended Answer that this suit is barred by

the doctrine of laches and the applicable statute of limitations. However, the Court need look only so far as the Virginia case of *Howe v. Howe*, 179 Va. 111, 18 S.E.2d 294 (1942) to reject these defenses. In *Howe*, the defendant asserted the pleas of laches and limitations to stifle the Supreme Court's determination that a foreign divorce decree was void for lack of subject matter jurisdiction. As an initial matter, the Court recognized:

'If a judgment be null, no action on the part of the plaintiff, no inaction upon the part of the defendant, no resulting equity in the hands of the third persons, can invest it with any of the elements of power or vitality.' It has been a long time since life was breathed into a dead body.

*Id.* at 120, 18 S.E.2d at 297 [quoting from *Snead v. Atkinson*, 121 Va. 182, 187, 92 S.E. 835, 837 (1917)]. The court continued:

Since the Arkansas decree was void, Mrs. Howe could have utterly disregarded it, as something nonexistent. It would be no more logical to have some statute to declare that after a stated time had passed no attack should be made upon this stillborn judgment. Time touches defective decrees but in passing can give no vital force to them. Which, in legal contemplation, might as well have never been written. An attempt to apply either laches or limitations to this decree would be an attempt to apply them to something which was not there, to give substance to a ghost.

*Id.* at 126, 18 S.E.2d at 300. *See generally* 11A M.J., *Judgments and Decrees*, § 145 (1978). Although a party may in certain limited circumstances be estopped from attacking the validity of a void judgment, *see Eubank v. Fuller*, 156 Va. 635, 158 S.E. 884 (1931), the Court has shown from its previous discussion that this is not a case in which estoppel arises.

5. The defendant makes a similar argument that Thelma Yates actually became a party to the suit of 1958 since, in 1970, her attorney petitioned the court in the same suit to be allowed to draw on the royalties which had been paid to the court's general receiver for the benefit of her infant daughters. However, the defendant presents no authority, nor can the court find any, which would support a finding that Thelma Yates' failure to object to the 1968 proceedings in that petition should operate as a waiver or estoppel against Mrs. Yates, much less her infant daughters.

## V. CONCLUSION

Accordingly, the plaintiffs' motion for summary judgment is granted, and the decree entered by the Circuit Court of Tazewell County, Virginia, ratifying, confirming and approving the lease of plaintiffs' lands is hereby declared null and void. An order to this effect shall be entered in this case.

The Clerk of this Court shall forward a certified copy of this Memorandum Opinion to all counsel of record.