**In re LUSH LAWNS, INC., Debtor.**

**Bankruptcy No. 96–13469.**

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

Nov. 19, 1996.

Stephen D. Hobt, Cleveland, OH, for Debtor.

Nora E. Jones, Director of Litigation Revenue Recovery Section, Columbus, OH, for State of Ohio.

Trish Lazich, Asst. Attorney General, Revenue Recovery Section, Cleveland, OH.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

### I.

Lush Lawns, Inc. (the Debtor) a lawn care business, sought relief through the filing of its voluntary petition under Chapter 11 of the Bankruptcy Code [11 U.S.C. 1101, *et seq.*] on June 28, 1996. Among several creditors scheduled on its petition, the State of Ohio's Department of Taxation (the State) was scheduled for various tax liabilities owed by the Debtor. The instant matter is before the Court upon the Debtor's Motion to have the State appear and show cause why the State should not be held in contempt for a willful violation of the automatic stay provision of § 362(a) of the Code, among other specified relief. In response, the State filed its Motion to Dismiss the Debtor's motion.

### II.

Following the filing of the Debtor's voluntary petition, the State caused to be issued its Notice of Intent to Suspend (the Notice) the Debtor's vendor's license for failure to file returns and pay certain tax obligations. This Notice was issued postpetition on or about July 5, 1996. Subsequently, on July 11, 1996, an agent of the State contacted the Debtor by telephone as a follow-up to the July 5 Notice. The agent reportedly was informed of the Debtor's bankruptcy filing at that particular time. Thereupon, the State canceled its scheduled posting of the proposed suspension of the Debtor's vendor's license.

On or about July 16, 1996, the Debtor caused to be filed its June, 1996 sales tax return with the State. Consequently, the State's agent informed the Debtor of its need to amend that return and file a separate sales tax return for the postpetition period of June 28, 1996 through June 30, 1996. Subsequently, on August 1, 1996, the State once again noticed the Debtor of its intent to suspend its vendor's license. (Stipulation of Facts, ¶ 7). On August 9, 1996, the State informed the Debtor of specific conditions to be met by the Debtor in order to avoid a suspension of its vendor's license. *Id.* Those conditions involved the filing of a postpetition sales tax return for the period of June 28—June 30, 1996 and liabilities thereon; the payment of a late filing fee for that return; and the extension of a certain security pledge. By August 12, 1996, the Debtor had complied with each of the required conditions, except for the one pertaining to a security pledge which was withdrawn by the State. *Id.* at pp. 2–3. Consequently, the Debtor's vendor's license was never suspended. *Id.*

### III.

In deciding this matter, the Court must determine: (1) whether jurisdiction is properly laid; and, if so, (2) whether the stay provision of § 362 of the Bankruptcy Code was violated.

In view of the aforementioned statement of issues, the Court must initially determine whether jurisdiction of this contested matter is proper. Citing the U.S. Supreme Court's recent decision in *Seminole Tribe of Florida v. Florida,* —— U.S. ——, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), the State argues that there has been no express waiver of its sovereign immunity, and it has not filed a proof of claim in the matter. As a result, the State contends the Court is without jurisdiction to adjudicate a show cause proceeding against it. The Debtor has presented no argument regarding jurisdiction. Instead, the Debtor contends that the State violated the stay provision of § 362.

An examination of the *Seminole* decision is appropriate. *Seminole* is a nonbankruptcy case wherein the U.S. Supreme Court ruled, *inter alia:*

The Eleventh Amendment presupposes that each State is a sovereign entity in our federal system and that "[i]t is inherent in

the nature of sovereignty not to be amenable to the suit of an individual without a state's consent." *Hans v. Louisiana,* 134 U.S. 1, 13 [10 S.Ct. 504, 506, 33 L.Ed. 842]. However, Congress may abrogate the State's sovereign immunity if it has "unequivocally expresse[d] its intent to abrogate the immunity and has acted pursuant to a valid exercise of power." *Green v. Mansour,* 474 U.S. 64, 68 [106 S.Ct. 423, 425–26, 88 L.Ed.2d 371].... *Id.,* at ——, 116 S.Ct. at 1118.

Upon the particulars presented in *Seminole,* the Supreme Court found that Congress unequivocally expressed its intent to abrogate the State of Florida's sovereign immunity under provisions of The Indian Gaming Regulatory Act, but failed to do so pursuant to a valid exercise of power. On that basis, it affirmed the Eleventh Circuit's opinion and upheld the State's sovereign immunity. Citing to two of its earlier decisions on the subject matter, the Supreme Court held that it had found authority to abrogate under only two constitutional provisions—the Fourteenth Amendment (see, *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614) and under the Interstate Commerce Clause of Article I. (see, *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989)).[1] In *Union Gas,* the plurality concluded that Congress could, under Article I, expand the scope of the federal courts' Article III jurisdiction, which the *Seminole* plurality found to be a contradiction of the fundamental notion that Article III sets forth the exclusive catalog of permissible federal court jurisdiction.

The Supreme Court in *Seminole* further held that the Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction. Additionally, the Court held that the doctrine of *Ex Parte Young* could not be used to enforce the statute in question against a state official.

In view of the Supreme Court's holding in *Seminole,* its rationale is examined with regard to the particulars of the instant matter. The Court must first be guided by the language of the Eleventh Amendment which provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

■ Herein, the State argues that the present contempt proceeding is barred by the Eleventh Amendment. Although the above-quoted language patently appears to restrict only the Article III diversity jurisdiction of the federal courts, the U.S. Supreme Court has construed the language to "... stand not so much for what it says, but for the presupposition ... which it confirms." *Seminole,* at ——, 116 S.Ct. at 1122, citing, *Blatchford v. Native Village of Noatak,* 501 U.S. 775, 779, 111 S.Ct. 2578, 2581, 115 L.Ed.2d 686 (1991); *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). In order to determine whether an act of Congress has abrogated a state's immunity from suit, a two-pronged test must be satisfied in the conjunctive: (1) whether Congress has unequivocally expressed its intent to abrogate immunity, *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 425, 88 L.Ed.2d 371 (1985); and (2) whether Congress has acted pursuant to a valid exercise of power. *Id.*

In 1994, Congress enacted an omnibus set of amendments to the Bankruptcy Code. (The Bankruptcy Reform Act of 1994, H.R. 5116, P.L. 103–394, 108 Stat. 4106). Among the several Code sections affected by such amendments was § 106. Therein, the following is noted:

> Sec. 113. Sovereign Immunity.
>
> Section 106 of Title 11, U.S.Code, is amended to read as follows:

---

1. Notably, the Supreme Court in *Seminole* concluded that *Union Gas* was decided wrongly and overruled it on three (3) grounds: (1) "It has been of questionable precedential value"; (2) "The deeply fractured decision has created confusion among the lower courts that have sought to understand and apply it"; and (3) "The plurality's rationale also deviated sharply from this Court's established federalism jurisdiction".

§ 106.  *Waiver of Sovereign Immunity.*

(a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:

(1) Sections 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 503, 505, 506, 510, 522, 523, 524, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 728, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title.

The above language of § 106(a) constitutes a clear and unequivocal expression of Congress to abrogate sovereign immunity with regard to the Code sections specified.  Thusly, the first prong of the abrogation test is satisfied.  Section 106(a) waives sovereign immunity of the federal and state governments for the recovery of money judgments.  Prior Supreme Court decisions held that § 106 only provided for a waiver of immunity with respect to declaratory and injunctive relief.  See, Bankruptcy Reform Act of 1994, Publ.L. No. 103–394, (H.R. 5116; Sec. 113), 108 Stat. 4106.  The principal purpose of § 113 was to effectuate Congress' pre-amendment intent regarding § 106 and its impact upon sovereign immunity dating back to the Code's 1978 enactment.  Its second purpose was to legislatively overrule *Hoffman v. Connecticut Dept. Of Income Maintenance,* 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989) and *U.S. v. Nordic Village, Inc.,* 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992).

Although not an issue raised by the parties herein, one may query whether the *Seminole* rationale is distinguishable from the present matter on the premise that the instant matter is a contested matter under the Bankruptcy Code, addressable under Rule 9014, Bankr.R., rather than a law "suit" addressed under the Eleventh Amendment.  That concern, however, is short lived in view of *Seminole.*  Herein, the Debtor seeks a contempt ruling against the State for alleged violations of the automatic stay provision of 11 U.S.C. § 362(a).  Since the essence of § 362 is injunctive in nature, and the relief sought by the *Seminole* plaintiff against the State of Florida was for prospective injunctive relief, the Supreme Court's decision in *Seminole* is fully controlling herein.  Section 362(a) the Code is a form of injunctive relief authorized by Congress under its Article I powers.  A bankruptcy court cannot acquire jurisdiction over a state unless the state waives its sovereign immunity by filing a proof of claim in the case or otherwise participates in a proceeding.  See also, *In re Martinez,* 196 B.R. 225 (D.P.R.1996) (Citing *Seminole,* the bankruptcy court lacked jurisdiction over the debtor's claim of a willful violation of the automatic stay, where the Commonwealth's Treasury had not filed a proof of claim in the case.)  Moreover, "the relief sought by a plaintiff suing a state is irrelevant to the question whether the suit is barred by the Eleventh Amendment."  *Seminole, supra,* —— U.S. at ——, 116 S.Ct. at 1124.

In summary, the State Department of Taxation has not filed a proof of claim against the Debtor's estate, and no demonstration was offered to show where the State has otherwise participated in the Debtor's bankruptcy case.  Further, the abrogation provisions of § 106 of the Code were enacted by Congress under the Bankruptcy Clause of Article I.  As pronounced in *Seminole,* such an attempt to abrogate was an invalid exercise of Congress' power under Article I, thereby rendering § 106 of Title 11 unconstitutional.  (See also, *In re York–Hannover Developments, Inc.,* 201 B.R. 137 (Bankr. E.N.C., 1996)).  Consequently, the issue of whether the automatic stay was violated need not be reached, as jurisdiction is lacking due to a nonwaiver of sovereign immunity.  Thusly, the State's sovereign immunity has not been waived nor abrogated with regard to the matter at bar.

*Conclusion*

Accordingly, the State's Motion to Dismiss the Debtor's Motion to Show Cause is hereby granted.

IT IS SO ORDERED.

*JUDGMENT ENTRY*

In Cleveland, in said District, on this 19th day of November, 1996.

A Memorandum Of Opinion And Order having been entered, the State's Motion to Dismiss the Debtor's Motion to Show Cause is granted.

IT IS SO ORDERED.