In re Ginger JUSTICE, Debtor.

Ginger JUSTICE, Plaintiff,

v.

STATE OF OHIO, BUREAU OF
WORKERS' COMPENSATION,
Defendant.

Bankruptcy No. 94–14310.
Adversary No. 97–1024.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

April 3, 1998.

Harry B. Zornow, Hamilton, OH, for debtor.

Thomas J. Straus, Ohio Attorney General's Office, Cincinnati, OH, for State of Ohio, Bureau of Workers' Compensation.

Margaret A. Burks, Cincinnati, OH, Chapter 13 Trustee.

## DECISION ON MOTION TO DISMISS AND MOTION TO AMEND

JEFFERY P. HOPKINS, Bankruptcy Judge.

This matter is before the Court on the motion to dismiss the complaint filed by the Debtor seeking an injunction against the Bureau of Workers' Compensation ("Bureau"). In the motion, the Bureau asserts, under the holding in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), that this Court lacks jurisdiction over it as an agency of the State of Ohio which is protected by Eleventh Amendment sovereign immunity. The Debtor then sought to amend her complaint to join James Conrad, Administrator of the Bureau of Workers' Compensation, as a party defendant ("Administrator"). The Bureau responded by objecting to Debtor's motion to amend the complaint, claiming also that the Court has no jurisdiction over the Administrator.

### Issues Presented

The issues to be resolved are (i) whether the Court can exercise jurisdiction over the Bureau, (ii) if this Court lacks jurisdiction over the Bureau, whether the Court can and should consider Debtor's motion to amend her complaint and (iii) whether Debtor should be permitted to amend her complaint to add the state official under the doctrine of *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

1. According to Debtor's complaint, the State is currently recouping overpayments from Claim

### Standard of Review

Motions to dismiss are governed by Federal Rule of Civil Procedure 12(b)(6) incorporated into bankruptcy proceedings pursuant to Rule 7012(b). In accordance with this rule the Court must construe all facts "in the light most favorable to the plaintiff, accept all factual allegations as true and determine whether the plaintiff undoubtedly can prove no set of facts in support of [its] claims that would entitle [it] to relief." *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993), *also see Hishon v. King & Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Motions to dismiss should only be granted if there is no doubt that, even if plaintiff is able to prove all facts necessary to support his claim as alleged, plaintiff would not be entitled to the relief sought. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The parties presented oral arguments on their motions on September 29, 1997, and the Court took the matters under advisement. Consistent with these standards the Court now considers the matters before it.

### Summary of the Facts

Debtor filed a petition under Chapter 13 on November 17, 1994, and her Plan was confirmed on January 24, 1995. The Bureau did not file a proof of claim in Debtor's Chapter 13 case. This adversary proceeding was begun against the Bureau on January 31, 1997. The complaint seeks an injunction prohibiting the Bureau from recouping an overpayment of workers' compensation benefits through a State administrative process. The Debtor concedes that the Bureau has a right to recoup the overpayments from the specific claim to which they relate (Claim # 91–18345)[1]. But, she asserts that the Bureau cannot recoup those overpayments from future unrelated workers' compensation claims that she might assert against the Ohio's workers' compensation fund. Debtor does not specify from what other claims the Bureau might attempt to recoup the overpayments or

# 91–18345.

whether she even has other claims to present for payment by the Bureau. Finally, the Debtor seeks a determination in these proceedings that the Bureau's "unsecured claim" for overpaid benefits will be discharged at the end of the case. The Bureau counters with an argument that its rights to recoupment of the overpayment under state law are not affected by the automatic stay. *See* 11 U.S.C. § 362. The Bureau's argument further implies that the discharge injunction applicable to other creditors does not affect its right of recoupment. *See* 11 U.S.C. § 727.

This led the Bureau on February 14, 1997, to file the motion to dismiss the complaint. In a response, Debtor concedes that the Court lacks jurisdiction over the Bureau. However, to counter the motion, Debtor moved to amend her complaint to join the Administrator of the Bureau, as a party defendant in the hopes of achieving the same objective. In the proposed amended complaint, Debtor requests:

> [A] declaration from this Court that Defendants' unsecured claim will be discharged upon completion of payments, except for [their] right of recoupment in Debtor's Workers Compensation Claim # 91–18345; that Defendants have no right of recoupment against Debtor's future Workers Compensation claims that are unrelated to Claim # 91–18345; an Order enjoining Defendants from any and all collection proceedings during the pending of Debtor's Chapter 13 case, other than recoupment;[2] an Order permanently enjoining Defendant[s] from any and all collection proceedings, other than recoupment.

Subsequently, the Bureau objected to Debtor's motion to amend on the basis that the Court has no jurisdiction to consider that matter either. In its response to the Debtor's motion, the State contends:

> The Bureau would not object to the refiling of Debtor's complaint adding another

party and cause of action. However, the Bureau desires an opinion by this Court that the Debtor's original action must be dismissed for lack of subject matter jurisdiction based on the holding of *Seminole Tribe of Florida.*

### *Jurisdiction over the Bureau*

As noted, the Debtor concedes that this Court lacks jurisdiction over the Bureau on the basis of the State's assertion of its Eleventh Amendment sovereign immunity.[3] The Court's inquiry, however, does not end there. Federal courts have both the power and the duty to determine their own jurisdiction and should not shift to another court a matter within its jurisdiction without examining its own duties. *United States v. United Mine Workers of Am.,* 330 U.S. 258, n. 57, 67 S.Ct. 677, 91 L.Ed. 884 (1947) ("It is now held that, except in case of plain usurpation, a court has jurisdiction to determine its own jurisdiction."); *Wilson–Jones v. Caviness,* 99 F.3d 203 (6th Cir.1996); *Dental Capital Leasing Corp. v. Martinez (In re Martinez),* 721 F.2d 262 (9th Cir.1983); *In re Holiday Towers, Inc.,* 18 B.R. 183 (Bankr.S.D.Ohio 1982) (in context of transferring case to another district, the court cautions that one court should not lightly shift to another court its duty to determine a matter within its own jurisdiction). Competing with this duty in the context of this particular case, is the State of Ohio's sovereign immunity and the desire of the State not to be forced to answer to its own citizens in federal court without consenting.

Having concluded that the Court has the authority to determine its own jurisdiction, we next turn to the holding in *Seminole Tribe* to consider whether it would be appropriate for us to entertain the present suit. *Seminole Tribe* defined a two-part test for the courts to use in determining whether Congress has abrogated sovereign immunity:

---

**2.** The Trustee's Final Report and Account was filed on March 30, 1998, indicating that Debtor has completed payments on her Plan and the case is ready to be discharged.

**3.** The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
>
> U.S. Const. amend. XI.

The first is whether Congress has unequivocally expressed its intent to abrogate the immunity and second, whether Congress has acted pursuant to a valid exercise of power. *Seminole Tribe*, 517 U.S. at 55, 116 S.Ct. 1114. *Seminole Tribe* further declared that Congress's authority to abrogate state sovereign immunity may only be exercised pursuant to § 5 of the Fourteenth Amendment and the Commerce Clause under Article I of the United States Constitution. *Seminole Tribe*, 517 U.S. at 59, 116 S.Ct. 1114. The Supreme Court went on, however, to overrule its earlier plurality decision in *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), the only case in which Article I powers had been employed by Congress in an attempt to abrogate state sovereign immunity. *Id.* at 66, 109 S.Ct. 2273.

With this backdrop, the Court must next apply the test in *Seminole Tribe* to the Bankruptcy Code. We first note that Article I of the United States Constitution provides:

The Congress shall have Power...

To establish ... uniform Laws on the subject of Bankruptcies throughout the United States.

U.S. Const. art. I, § 8, cl. 4. In an effort to override state sovereign immunity, § 106(a) of the Bankruptcy Code provides in pertinent part:

Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:

(1) Sections 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 503, 505, 506 510, 522, 523, 524, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 728, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title.[4]

(2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.

Because the language of § 106(a) is a clear expression of Congressional intent to abrogate sovereign immunity, the first part of the test in *Seminole Tribe* has been satisfied. *See Department of Transp. v. PNL Asset Management Co., LLC (In re Estate of Fernandez)*, 123 F.3d 241, 243 (5th Cir.), *amended on denial of reh'g*, 130 F.3d 1138, (5th Cir.1997); *In re Lush Lawns, Inc.*, 203 B.R. 418, 421 (Bankr.N.D.Ohio 1996).

The second prong of the test set forth by the Supreme Court is not, however, so easily assuaged. In a recent decision, Judge Baxter of the Northern District of Ohio, was presented with the opportunity to discuss the effect of *Seminole Tribe* on the constitutionality of § 106(a) and whether § 106 was enacted pursuant to a valid exercise of Congressional power. In his well-reasoned opinion, Judge Baxter held:

[T]he abrogation provisions of § 106 of the code were enacted by Congress under the Bankruptcy Clause of Article I. As pronounced in *Seminole*, such an attempt to abrogate was an invalid exercise of Congress' power under Article I, thereby rendering § 106 of Title 11 unconstitutional.

*In re Lush Lawns, Inc.*, 203 B.R. at 421.

In similar fashion, the Fourth Circuit summarized its repudiation of Congress's apparent attempt under § 106(a) to abrogate state sovereign immunity as follows:

[W]e conclude in light of *Seminole* that Congress is not empowered to use Article I authority, specifically the Bankruptcy Clause, to circumvent the Eleventh Amendment's restriction on federal jurisdiction. Because there is no evidence that Congress either passed the Bankruptcy Code under § 5 of the Fourteenth Amendment or sought to preserve the core values specifically enumerated in that amendment, we hold that Congress' effort to abrogate the states' Eleventh Amendment immunity through its 1994 enactment of 11 U.S.C. § 106(a) is unconstitutional and ineffective.

*Schlossberg v. Maryland Comptroller of the Treasury (In re Creative Goldsmiths of Washington D.C., Inc.)*, 119 F.3d 1140, 1147 (4th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1517, 140 L.Ed.2d 670 (1998). Oth-

---

**4.** Debtor's complaint appears to assert a claim under § 362.

er courts have also determined, subsequent to *Seminole Tribe,* that Congress did not have the power to abrogate sovereign immunity when it enacted § 106(a). *See In re Estate of Fernandez,* 123 F.3d at 246 (Congress does not have authority pursuant to its bankruptcy power in art. I, § 8, cl. 4. of the Constitution nor pursuant to § 5 of the Fourteenth Amendment to abrogate state ·sovereign immunity by enacting § 106(a)); *Guiding Light Corp. v. Louisiana Dep't of Health & Hospitals (In Matter of Guiding Light Corp.),* 213 B.R. 489 (Bankr.E.D.La.1997).

Both the Sixth Circuit Court of Appeals and the Bankruptcy Appellate Panel for this circuit have had occasion to consider *Seminole Tribe* in recent cases. *See Toth v. Michigan State Hous. Dev. Auth.,* 136 F.3d 477 (6th Cir.1998); *French v. Georgia Dep't of Revenue (In re ABEPP Acquisition Corp.),* 215 B.R. 513 (6th Cir. BAP 1997). However, neither court squarely addresses the issue of whether 11 U.S.C. § 106(a) can withstand constitutional muster. In *Toth,* the Sixth Circuit indicated that it did not need to reach the constitutional question to decide that case.

Likewise, in *In re ABEPP,* although the BAP indicates that the parties' filings in the bankruptcy court raised the issue of the constitutionality of § 106(a), the trustee strategically avoided the issue by asserting jurisdiction on the theories of waiver, in rem jurisdiction or the doctrine of *Ex parte Young.* There also the BAP affirmed the refusal of the bankruptcy court to exercise jurisdiction over the State of Georgia or over Georgia officials where monetary relief had been sought. In so doing, the BAP expressed tacit support for the view that Congress's enactment of § 106(a) in an effort to abrogate state sovereign immunity is invalid by citing with approval *In re Estate of Fernandez, supra,* and *In re Creative Goldsmiths, supra,* two cases which have held § 106(a) unconstitutional.

█ This Court finds persuasive the cases cited by the BAP and those referred to earlier in this opinion which have found § 106(a) unconstitutional based on *Seminole Tribe.*

The Court adopts the reasoning and analyses set forth in each and holds that Congress's effort to abrogate the states' Eleventh Amendment immunity through the enactment of § 106(a) is invalid.[5]

The Court is further persuaded of the correctness of this decision by more recent activity at the Supreme Court. After *Seminole Tribe,* the Supreme Court vacated and remanded a case in which the Seventh Circuit had determined that the enactment of § 106(a) was a valid exercise of Congressional power under the Bankruptcy Clause of the Constitution. The case was remanded to the Seventh Circuit, specifically, for further consideration in light of *Seminole Tribe. See In the Matter of Merchants Grain, Inc.,* 59 F.3d 630 (7th Cir.1995), *vacated and remanded sub nom., Ohio Agric. Commodity Depositors Fund v. Mahern,* 517 U.S. 1130, 116 S.Ct. 1411, 134 L.Ed.2d 537 (1996).

Had the Supreme Court been so inclined to distinguish Congress's power to abrogate sovereign immunity under the Bankruptcy Clause from the Court's invalidation of such power under the Commerce Clause and Indian Commerce Clause—also powers falling under Congress's Article I authority—it seems likely that the Court would have taken the opportunity presented in *Merchants Grain,* to clarify its view. That Congress may possess the authority pursuant to Article I to have enacted § 106(a) under the 1994 amendments to the Bankruptcy Code remains an open question as far as the Supreme Court is concerned. However, the Court's decision to remand *Merchants Grain* and to avoid making a pronouncement of § 106(a)'s constitutionality, is perhaps telling of its belief that Congress has no authority to legislate in this area.

Based on the holding in *Seminole Tribe* and subsequent cases applying those principles to 11 U.S.C. § 106(a), the Bureau's motion to dismiss must, therefore, be **GRANTED.** Debtor's complaint is **DISMISSED** as to the State of Ohio, Bureau of Workers' Compensation for lack of jurisdiction.

---

**5.** *But see In re O'Brien,* 216 B.R. 731 (Bankr. D.Vt.1998) finding § 106 is constitutional but deferring to the state's election not to have its rights adjudicated in a federal forum.

## Motion to Amend

### A. Jurisdiction to Review Motion to Amend.

■ The Bureau also contends that since the Court lacks jurisdiction over it, the Court, therefore, lacks jurisdiction to entertain a motion by the Debtor to amend her complaint. We disagree. Motions to amend a complaint are governed by Rule 15. Concerning this rule, the Sixth Circuit has stated:.

> Rule 15(a) of the Federal Rules of Civil Procedure provides that a party desiring to amend his pleading after a responsive pleading has been served may do so "only by leave of court ... and leave shall be freely given when justice so requires." The Rules put forth a liberal policy of permitting amendments in order to ensure determination of claims on their merits.

*Ellison v. Ford Motor Co.*, 847 F.2d 297, 300 (6th Cir.1988). *See also* Fed.R.Civ.P. 15 made applicable to bankruptcy proceedings by Fed.R.Bankr.P. 7015.

The Bureau would have the Court require this Debtor to incur the additional costs of refiling her complaint rather than permitting her to amend the complaint. This is a waste of the Debtor's and the Court's valuable resources and constitutes the doing of a worthless act. Debtors seeking relief from the bankruptcy court do not have funds available to waste. *See In re Bell & Beckwith*, 89 B.R. 632, 640 (Bankr.N.D.Ohio 1988) (equity will not require the doing of a vain or useless thing).

Moreover, the Court is required by relevant Sixth Circuit authority to thoroughly review motions to amend a complaint where defendants have moved to dismiss, including ones for dismissal on the basis of lack of jurisdiction. *Marks v. Shell Oil Co.*, 830 F.2d 68 (6th Cir.1987) (dismissal of suit based upon the original complaint without first considering the motion to amend was an abuse of discretion); *John M. Peters Constr. Co. v. Marmar Corp.*, 329 F.2d 421 (6th Cir.1964) (reversing dismissal of action on basis of lack of jurisdiction and remanding to permit plaintiff to amend complaint to include alternative cause of action). *See also Sault Ste. Marie Tribe of Chippewa Indians v. State of Michigan*, 800 F.Supp. 1484 (W.D.Mich.1992) (granting state's motion to dismiss on basis of state's sovereign immunity and lack of jurisdiction but retaining jurisdiction for reasonable time to permit plaintiffs to file a motion to amend their complaint to name state officials as defendants), *appeal dismissed by Sault Ste. Marie Tribe of Chippewa Indians v. State of Michigan*, 5 F.3d 147 (6th Cir.1993);[6] *Guiding Light Corp.*, 213 B.R. 489 (dismissing debtor's adversary proceeding against the State of Louisiana Department of Health & Hospitals but granting motion to amend complaint to add state official); *Cline v. Richards*, 455 F.Supp. 42 (E.D.Tenn.1977) (granting plaintiff 10 days to amend complaint in response to defendant's motion to dismiss for lack of jurisdiction); *McMinn County v. City of Athens*, 219 F.Supp. 705 (E.D.Tenn.1963) (upon filing of plaintiff's motion to amend complaint prior to entry of court's memorandum opinion granting dismissal of complaint on basis of lack of jurisdiction, the court permitted plaintiff's amendment).[7]

---

**6.** *Saulte Ste. Marie Tribe* was decided prior to *Seminole Tribe* and involved a suit under the Indian Gaming Regulatory Act (IGRA). *Seminole Tribe* provided that based on the intricate remedial procedures set forth in the IGRA, the *Ex parte Young* doctrine could not be applied in suits involving the IGRA. *Seminole Tribe*, 517 U.S. at 74, 116 S.Ct. 1114. Therefore, while the ability to permit plaintiffs to amend their complaint to add state officials in suits involving the IGRA is called into question, the *Ex parte Young* doctrine continues to be viable in other situations and the retention of jurisdiction by the court to permit such filing was unaffected by *Seminole Tribe* when applied to other situations.

**7.** *Contra, Coplin and Assoc. v. United States*, No. 93–1181, 1994 WL 279395 (6th Cir. June 22, 1994). *Coplin and Assoc.* is an unpublished decision, in which the Sixth Circuit affirmed the district court's granting of the government's motion to dismiss on the basis of sovereign immunity without considering plaintiff's motion to amend. As noted in Judge Jones' dissent, this decision is contrary to the published decisions of the Sixth Circuit. *See Ellison*, 847 F.2d 297; *Marks*, 830 F.2d 68. We note, moreover, that unpublished decisions of the Sixth Circuit are not binding precedent. *See Belfance v. Black River Petroleum, Inc. (In re Hess)*, 209 B.R. 79, n. 3 (6th Cir. BAP 1997); *see also* 6th Cir.R. 24(c).

■ As summarized by the court in *McMinn County:*

> Amendments curative of defective or imperfect pleadings should be freely allowed.... This is so when justice requires and the adverse party will not thereby be prejudiced.... It is the aim of courts, wherever possible, to adjudicate all cases on their merits rather than on technicalities, and liberal treatment of amendments is to be encouraged where the adversary will suffer no prejudice or disadvantage. [Citations omitted.]

*McMinn County,* 219 F.Supp. at 708. Accordingly, the Court concludes that it retains jurisdiction to review Debtor's motion to amend her complaint.

### B. Determination on Motion to Amend.

■ The Sixth Circuit has articulated several factors which courts are to consider when determining whether to permit an amendment to a complaint:

> Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision. Delay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.

*Robinson v. Michigan Consol. Gas Co., Inc.,* 918 F.2d 579, 591 (6th Cir.1990) (quoting *Head v. Jellico Hous. Auth.,* 870 F.2d 1117, 1123 (6th Cir.1989)).

As noted, the Bureau objects to the motion to amend solely on the ground that the Court lacks jurisdiction to consider the motion. The Bureau has not raised any of the issues articulated above. However, this Court finds that Debtor moved quickly in filing her motion to amend, and there is no evidence of bad faith or delay by failing to cure deficiencies by prior amendments. The Bureau has not asserted lack of notice or undue prejudice and has in fact indicated its consent to the filing of a new complaint. The only basis, therefore, for denying the motion to amend rests on the issue of futility.

The Bureau briefly raised the issue of whether the complaint as amended to add the State official would be futile. The Bureau contends that the Court also lacks jurisdiction over the State official proposed to be named in the lawsuit. The parties did not, however, adequately address this issue in their arguments before the Court.

In *In re ABEPP,* a case decided by the Sixth Circuit Bankruptcy Appellate Panel shortly after the hearing on this matter, the BAP denied a chapter 7 trustee's motion to join or substitute the Commissioner of the Georgia Department of Revenue as a party defendant in a suit against the State of Georgia. That denial was based on the fact that the trustee was not seeking prospective injunctive relief against a state official. The BAP found in *In re ABEPP* that "[t]here were not, and are not, any pending or proposed actions by the Department for which the Trustee could be granted a declaratory judgment or prospective relief. The principles of *Ex parte Young* are inapplicable to suits which are essentially to recover money from a state." *In re ABEPP,* 215 B.R. at 519.

Unlike the plaintiff in *In re ABEPP,* in this case, Debtor proposes to amend her complaint to seek only prospective injunctive relief for an alleged continuing violation of federal law by the State official involved. Here, the Debtor points to the threat by the Administrator to recoup an overpayment of workers' compensation benefits from unrelated future claims she may file as a violation of the bankruptcy laws. Moreover, Debtor asserts that the proposed amended complaint does not seek any monetary damages from the State official proposed to be added, only injunctive relief in a manner permitted by the *Ex Parte Young* doctrine. Under that theory, *In re ABEPP* is distinguishable somewhat from the case at bar.

The Court determines that Debtor's motion to amend is not futile on the basis asserted by the Bureau. State officials can, in some circumstances, be named as party defendants in federal court litigation brought

by the citizens of that particular state.[8] However, in order for the Debtor's amended complaint to survive the motion to dismiss, the Court must possess the authority under an *Ex Parte Young* analysis to grant the injunctive relief requested. Unfortunately for Debtor, her amended complaint is futile on a basis not raised by the parties at the hearing but apparent from a review of the file and authority regarding recoupments.

As earlier stated, Debtor concedes that the Bureau is entitled to recoup overpayments from her workers' compensation Claim # 91–18345. However, Debtor argues in her proposed amended complaint, contrary to the State's assertions, that the Bureau has no right to recoup those overpayments from unrelated claims. Finally, Debtor contends that the Bureau's claim for recoupment is dischargeable.

In deciding whether under the amended complaint the Debtor has stated a claim entitling her to the relief requested, the Court must first examine the extent and nature of the State's right of recoupment. On this issue, the Supreme Court of Ohio has held that overpayments of workers' compensation benefits caused by a clerical error may be recouped by taking deductions from future benefits. *See State ex rel. Weimer v. Industrial Comm'n,* 62 Ohio St.2d 159, 404 N.E.2d 149 (1980). In so holding, the Ohio Supreme Court determined that:

> The Commission should be held to have inherent power to prevent the misappropriation or the misapplication of the insurance fund to claimants who are afterwards

found not to be entitled thereto. The state insurance fund is in the nature of a trust fund, and it is the duty of the Commission to impartially distribute the same among persons entitled thereto, and not permit the fund to be depleted or become the object of fraud or imposition, and, it being clearly their moral and legal duty to correct any mistake or fraud or imposition which will result in a misapplication or misappropriation of any part of the fund, the law should not be so construed, even in case of ambiguity; neither should the Legislature be held to have intended to enact any provisions which would in any manner hamper or interfere with the members of the Commission in their efforts to protect the fund.

*Weimer,* 62 Ohio St.2d at 161, 404 N.E.2d 149 (quoting *Industrial Comm'n v. Dell* 104 Ohio St. 389, 396–97, 135 N.E. 669 (1922)).

Under similar facts as the case at bar, Judge Aug recently determined that the Ohio Bureau of Employment Services (OBES) could recoup an overpayment of unemployment compensation benefits from future benefits due the debtor. *In the Matter of Gaither,* 200 B.R. 847 (Bankr.S.D.Ohio 1996). In his well-thought decision, Judge Aug concludes that the OBES was entitled to recoupment of the overpaid benefits because "the debtor and the creditor's claims arose from the same societal contract for unemployment compensation" and because

> [U]nemployment insurance benefits are not the product of an employee's labor or

---

**8.** *See Seminole Tribe,* 517 U.S. at 73 & n. 16, 116 S.Ct. 1114 (distinguishing *Ex parte Young* from *Seminole Tribe* and stating that "several avenues remain open for ensuring state compliance with federal law.... Most notably, an individual may obtain injunctive relief under *Ex parte Young* in order to remedy a state officer's ongoing violation of federal law."); *Wilson–Jones,* 99 F.3d 203 (individuals may sue state officials in federal court for an injunction ordering the official to comply with federal law but may not sue state officials for monetary damages in federal court).

Furthermore, as stated in *In the Matter of Guiding Light:*

> In *Ex parte Young,* supra, the Supreme Court held that federal jurisdiction existed over a suit against a state official, where the state itself could not be sued in federal court, when the suit sought only prospective injunctive relief in

order to end a continuing violation of federal law. In *Seminole,* the Supreme Court reaffirmed the continuing vitality of this rule. [*Seminole,* 517 U.S. at 73 & n. 16, 116 S.Ct. 1114].

*In the Matter of Guiding Light,* 213 B.R. at 491. In *Guiding Light* the bankruptcy court dismissed the State of Louisiana from the action pursuant to the mandate of *Seminole Tribe,* but permitted the debtor to amend its complaint and maintain an action to enjoin the state official from further withholding benefits being claimed by the debtor under a state entitlement program. *But see Guiding Light Corp. v. Jindal (In Matter of Guiding Light),* 217 B.R. 493 (Bankr.E.D.La.1998) (Guiding Light's complaint was ultimately dismissed when it attempted to recover monetary damages from the state official).

contributions, but rather the result of unemployment insurance taxes paid by employers to fund a pool of money against which involuntarily unemployed persons may file a claim and draw benefits.

*Id.* at 852.

Moreover, Judge Aug notes that:

Because recoupment only reduces a debt, rather than constituting an independent basis for a debt, it is not a claim in bankruptcy, therefore, it is not subject to the discharge injunction.

*Id.* at 850. Unlike this case, however, the Ohio Revised Code provides specific statutory authority permitting the administrator of the OBES to recoup overpayments from "any future benefit payment." Ohio Rev.Code Ann. § 4141.35 (Anderson Supp.1995).

Regardless of the statutory distinction between the two cases, the Court believes that the same analysis is applicable. In the present case, the Debtor's and the Bureau's claims arise from the same societal contract for workers' compensation benefits and those benefits are not the product of an employee's labor or contributions, but rather the result of workers' compensation insurance taxes paid by employers to fund a pool against which employees incurring work-related injuries may file a claim and draw benefits.[9] Although Ohio's workers' compensation statute does not contain specific language with respect to recoupment from any future benefits, the statute does provide that the Industrial Commission maintains continuing jurisdiction over each case and is authorized to make modifications and changes that, in its opinion, are justified. Ohio Rev.Code Ann. § 4123.52 (Anderson 1995). In addition, the Ohio Administrative Code indicates that with respect to overpayments of temporary disability benefits, the overpayment "shall be recovered from future awards related to the claim *or any other claim.*" Ohio Admin.Code § 4121–3–32(B)(2)(d) (1998) (emphasis added). The Court has not been advised as to what benefits the overpayment relates or the basis of recoupment; however,

the above language clearly demonstrates that the Bureau may indeed recoup overpayments from unrelated claims in at least one instance.

In addition, the Ohio Supreme Court's decision in *Weimer* clearly dictates that the courts should not "hamper or interfere with the members of the Commission in their efforts to properly protect the fund" and that it is the moral and legal duty of the members "to correct any mistake or fraud or imposition which will result in a misapplication or misappropriation of any part of the fund." *Weimer*, 62 Ohio St.2d at 161, 404 N.E.2d 149 (quoting *Dell*, 104 Ohio St. at 396–97, 135 N.E. 669).

■ The Debtor concedes that the Bureau is entitled to recoup the overpayments made to her on the only claim she asserts is currently pending with the Bureau. Moreover, the Bureau has an independent right to recoup any overpayments of workers' compensation benefits Debtor may present in the future against the State fund. This Court is prohibited from granting the injunctive relief sought. Ohio's recoupment rights do not represent a "claim" against the estate of the Debtor, and are therefore not subject to either the automatic stay or the discharge injunction imposed by the bankruptcy laws. Because § 106(a) does not abrogate the State of Ohio's sovereign immunity under the Eleventh Amendment of the Constitution and no claim under the *Ex Parte Young* doctrine can be asserted here, the Court concludes that the request for relief sought in the amended complaint is futile.

Based on the foregoing, Debtor's motion to amend is hereby **DENIED,** and the complaint shall be **DISMISSED** as this Court is without jurisdiction to enjoin the Administrator from recouping the loss suffered by the Bureau of Workers' Compensation fund. This determination presupposes that the Bureau's right to recoupment must first be adjudicated under Ohio law which includes appeal rights through the State's Industrial

**9.** Ohio Rev.Code Ann. § 4123.01, et seq. (Anderson 1995).

Commission and court system.[10]

**IT IS SO ORDERED.**

---

10. In the event a claimant contests the decision of the district hearing officer who first makes a decision on the claim, the Ohio workers' compensation and Industrial Commission statutes provide an administrative appeal process which includes an appeal to the Court of Common Pleas. In the alternative, the claimant may consider whether a writ of mandamus from the Supreme Court (and in some instances from the Court of Appeals) is appropriate. Ohio Rev.Code Ann. §§ 4123.51.1, 4123.51.2, 4121.27. *See also* O.Jur.3d, Workers' Compensation §§ 273, 276.