In re Bobby Joe OSBORNE, Debtor.

Judy Fay Crawford, Plaintiff,

v.

Bobby Joe Osborne, Defendant.

Bankruptcy No. 00–33265.
Adversary No. 00–3132.

United States Bankruptcy Court,
E.D. Tennessee.

April 30, 2001.

Gail F. Wortley, Knoxville, TN, for Plaintiff.

Turner & Vittone, Jimmie D. Turner, Oliver Springs, TN, for Defendant.

### MEMORANDUM

RICHARD STAIR, Jr., Bankruptcy Judge.

Before the court is the Plaintiff's Complaint to Determine Dischargeability of Debt (Complaint) filed on November 16, 2000. By her Complaint, the Plaintiff seeks a determination that three marital debts (the Marital Debts) assumed by the Defendant (Debtor) in the parties' Marital Dissolution Agreement are non-dischargeable pursuant to 11 U.S.C.A. §§ 523(a)(5) or (15) (West 1993 & Supp.2000). This matter was tried before the court on April 9 and 23, 2001.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(I) (West 1993).

### I

Formerly husband and wife, the parties were divorced on October 27, 1998, pursuant to a Final Decree of Divorce entered in the Fourth Circuit Court for Knox County, Tennessee. The divorce decree incorporates by reference the parties' Marital Dissolution Agreement (MDA) dated October 26, 1998, which provides in material part:

4. *Non-dischargeability.* With respect to each party's responsibility for payment of certain debts and liabilities, and their obligation to hold the other harmless for the payment thereof, the parties understand and agree that their obligation is a non-dischargeable debt under the Bankruptcy Code, this obligation being part of the final financial support settlement for both parties.

. . . .

20. *Alimony Waived.* In consideration of Husband waiving all claims to the wife's [sic] PIA account, the assumption of certain marital debts by Husband, the stipulation for each party to retain their own retirement account and other good and valuable consideration, both party's [sic] agree that they waive any and all claims for alimony that they might have in this divorce action between them.

21. *Debts*. Each party agrees to assume, pay and hold the other party harmless from any of the debts that were incurred in their own individual names during the marriage. Husband agrees to assume all liability and responsibility for all outstanding indebtedness associated with the following joint accounts:

(a) American General Finance Account # 3952272029862918;

(b) Discover Card Account # 6011006610593890; and

(c) Household Credit Service Account # 5432354309790937.

Each party represents unto the other party that each party has no knowledge of any other outstanding joint or marital debt except that which might be associated with the parties' marital residence, which is provided for hereinafter. However, the parties agree that in the event a debt shall become known, that each party agrees that the party who incurred the debt shall be solely responsible for said debt and shall hold the other party harmless therefrom.

Each party agrees that any charges either party might have made or any liability that would result from either party's own individual credit cards, charge accounts, signature loans, lines of credit or other type of indebtedness shall become that individual party's sole and exclusive responsibility, and that party shall hold the other party harmless therefrom.

On August 17, 2000, the Debtor filed a Voluntary Petition under Chapter 7. He listed the Plaintiff as a co-debtor on the debt to Household Credit Service,[1] but did not schedule the Plaintiff as a co-debtor on the Discover Card account.[2] The American General Finance debt is not accounted for in the Debtor's schedules, and the testimony at trial indicated that the account had been paid in full.

## II

■ The Plaintiff objects to the dischargeability of the American General Finance, Discover Card, and Household Credit Service accounts pursuant to § 523(a)(5) of the Bankruptcy Code. That section provides that a discharge under Chapter 7 does not discharge an individual debtor from any debt:

[T]o a spouse [or] former spouse ... of the debtor, for alimony to, maintenance for, or support of such spouse ... in connection with a separation agreement, divorce decree or other order of a court of record ... but not to the extent that—

. . . .

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support[.]

11 U.S.C.A. § 523(a)(5) (West 1993 & Supp.2000). The non-debtor spouse bears the burden of establishing non-dischargeability. *See Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1111 n. 15 (6th Cir. 1983).

■ Alternatively, the Plaintiff asserts that the Marital Debts are non-dischargeable under § 523(a)(15), which excludes from discharge a debt:

[N]ot of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in

---

1. The Debtor's Schedule F lists the amount of Household Credit Service's claim at $3,482.41.

2. The Debtor's Schedule F lists the amount of Discover Card's claim at $743.57.

connection with a separation agreement, divorce decree or other order of a court of record ... unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor[.]

11 U.S.C.A. § 523(a)(15) (West Supp.2000). The non-debtor spouse bears the burden of proving that the debt is not of the kind described in § 523(a)(5) and that the debt was incurred by the debtor "in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record." *See Armstrong v. Armstrong (In re Armstrong),* 205 B.R. 386, 391 (Bankr. W.D.Tenn.1996); *In re Smither,* 194 B.R. 102, 107 (Bankr.W.D.Ky.1996). The burden then shifts to the debtor to prove one of the affirmative defenses set forth in § 523(a)(15)(A) or (B). *See Armstrong,* 205 B.R. at 391; *Smither,* 194 B.R. at 107; *see also Patterson v. Patterson (In re Patterson),* 132 F.3d 33, 1997 WL 745501, at *2 (6th Cir.1997).

### III

■ As an initial matter, the court must first discuss the nature of the obligations assumed by the Debtor in light of the hold harmless provisions contained in the MDA. In *McCracken v. LaRue (In re LaRue),* 204 B.R. 531 (Bankr.E.D.Tenn.1997), this court held that §§ 523(a)(5) and (a)(15)

were inapplicable to joint debts assumed in a manner similar to those in the present case because of the absence of a hold harmless agreement. *See LaRue,* 204 B.R. at 534–36.

The parties in *LaRue* were formerly husband and wife and were divorced pursuant to a Final Decree which imposed certain obligations on the defendant debtor. At issue in *LaRue* was the provision of the Final Decree directing that the defendant "shall pay the outstanding balances on the Lowe's charge card, Citi-Bank, in the approximate sum of $5,100.00, and the Tennessee Teacher's Credit Union account, in the approximate sum of $3,200.00." *Id.* at 532. The Final Decree contained no hold harmless language "requiring the Debtor to indemnify or reimburse the Plaintiff for any portion of the parties' joint obligations she is required to pay." *Id.*

Citing a portion of § 523(a)(5)'s legislative history, the court held that there was no debt "in connection with" the Final Decree, as required by § 523(a)(5), because obligations to third parties are within the statute's reach only if there is an "entitlement to indemnification or reimbursement in favor of the Plaintiff if the Debtor fails to make the payments required." *Id.* at 534–35. The debts at issue were thus "obligations to third party creditors, not his former spouse," and not subject to § 523(a)(5). *Id.* at 535. Similarly, and again citing legislative history, the court held that the debts fell outside the scope of § 523(a)(15) as well:

In sum, this court holds that, in the absence of a hold harmless agreement, § 523(a)(15) is inapplicable to joint debts that were incurred by the Debtor prior to the divorce proceeding. Moreover, § 523(a)(15) is also inapplicable to debts owing to third parties, despite the fact

that they were incurred in the divorce proceeding, since the statute, supported by its legislative history, makes it clear that this exception to dischargeability applies only to debts that are owed to a spouse or former spouse. Because all of the obligations at issue in the present proceeding are obligations owed by the Debtor to third party creditors as opposed to his former spouse, § 523(a)(15) is inapplicable to an action to render these debts nondischargeable.

*LaRue,* 204 B.R. at 536; *accord Belcher v. Owens (In re Owens),* 191 B.R. 669 (Bankr.E.D.Ky.1996).

In the present case, the Debtor argues that the Marital Debts are dischargeable under *LaRue.* In paragraph 21 of the MDA, the Debtor agrees to "assume all liability and responsibility" for the three disputed joint Marital Debts, but there is no mention of indemnification of the Plaintiff. In contrast, immediately preceding and following the Marital Debt provision, each party expressly agrees to hold the other harmless for debts incurred in their individual names during the marriage. Paragraph 4 of the MDA, addressing nondischargeability in bankruptcy, is less than clear, stating that:

> With respect to each party's responsibility for payment of certain debts and liabilities, and their obligation to hold the other harmless for the payment thereof, the parties understand and agree that their obligation is a non-dischargeable debt under the Bankruptcy Code, this obligation being part of the final financial support settlement for both parties[.] [3]

This provision could be read as (A) an indemnification provision applying to all obligations of each party under the MDA; or (B) a reference to only those "certain debts and liabilities" that are directly referenced by a hold harmless provision. The court finds that the latter interpretation is the correct one. Thus, the Debtor's obligation under the MDA to pay the three joint debts at issue is not accompanied by a hold harmless agreement in favor of the Plaintiff.

The court's decision in *LaRue* therefore dictates that the Plaintiff's Complaint should be dismissed. However, subsequent to *LaRue,* the Bankruptcy Appellate Panel of the Sixth Circuit Court of Appeals in a well-reasoned decision has reached a contrary result. *See Gibson v. Gibson (In re Gibson),* 219 B.R. 195, 203 (6th Cir. BAP 1998).

In *Gibson,* the defendant agreed under the parties' Separation Agreement to "pay any and all debts to his parents, if any." *Id.* at 198. The defendant later filed bankruptcy with a $26,500.00 debt to his stepfather remaining unpaid. *See id.* at 197. The plaintiff then filed a non-dischargeability complaint under §§ 523(a)(5) and (a)(15). *See id.* at 198. The bankruptcy court granted summary judgment for the defendant due to the absence of a hold harmless provision and because the debt was not owed directly to the plaintiff. *See id.* The Bankruptcy Appellate Panel reversed.

Citing Sixth Circuit authority that "payments in the nature of support need not be made directly to the spouse or dependent to be nondischargeable," [4] the panel noted

---

**3.** The court quotes this paragraph only in reference to the hold harmless language. The Plaintiff makes no assertion that the "nondischargeable" language of this paragraph is enforceable.

**4.** It is unclear how broadly the Sixth Circuit intended for this statement to be taken because it is equally unclear whether that court was discussing any situation other than a debt accompanied by a hold harmless provision. The cited paragraph reads in full:

that the proper inquiry under § 523(a)(5) is whether "an assumption of joint debts is 'in the nature of alimony, maintenance, or support[.]' " *Id.* at 199 (citing and quoting *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1107 (6th Cir.1983)). The determination is to be made according to federal bankruptcy law rather than state law or the labels used by the parties. *See Gibson*, 219 B.R. at 199.

As for § 523(a)(15), *Gibson* held that "the determination of whether a debtor incurs a debt in connection with a Separation Agreement or Dissolution Decree is not limited to the use of hold harmless or other specific indemnification language." *Gibson*, 219 B.R. at 203; *see also Patterson v. Patterson (In re Patterson)*, 132 F.3d 33, 1997 WL 745501, at *2 (6th Cir. 1997) ("Under [§ 523(a)(15)], a debtor is not discharged from *any* marital debt that is not in the nature of alimony, maintenance or support unless (1) the debtor is unable to pay the debt, or (2) the benefit to the debtor of discharging the debt would outweigh the detriment to the debtor's former spouse.") (emphasis added); *McCafferty v. McCafferty (In re McCafferty)*, 96 F.3d 192, 200 (6th Cir.1996) (Section 523(a)(15) "allow[s] exemptions from discharge for all obligations incurred as a result of a divorce decree."). Examining the language of the statute, the *Gibson* panel continued:

> Section 523(a) governs the dischargeability of "any debt" that satisfies the provisions of one of its subsections, including subsection (a)(15).... "A 'debt' is defined in the Code as 'liability on a claim', a 'claim' is defined in turn as a 'right to payment,' and a 'right to payment[ ]' ... 'is nothing more nor less than an enforceable obligation.' Those definitions 'reflec[t] Congress' broad ... view of the class of obligations that qualify as a 'claim' giving rise to a 'debt....' "
>
> . . . .
>
> Notably absent from the qualifying language of § 523(a)(15) are the phrases "hold harmless" and "payable to a third party."

*Gibson*, 219 B.R. at 202 (internal citations omitted). The panel concluded that it must look beyond the presence or absence of indemnification language to applicable non-bankruptcy law in order to determine whether a debt was "incurred by" the debtor in the course of the marital dissolution. *Id.* at 203 (expressly "declin[ing] to adopt" the analysis of *LaRue* and *Owens* ).

*Gibson* then considered Ohio domestic relations law to determine whether the defendant incurred a debt in connection with the parties' Separation Agreement. *See id.* at 203–05. Because Ohio law permitted the trial court to enforce the terms of their Separation Agreement, the agreement brought to the parties' relationship "significant new legal consequences." *See id.* at 203–04 ("The entry of the Dissolution Decree extinguished all pre-existing obligations of the parties to each other ... [and] replaced those obligations with new ones fully enforceable as a judgment of the domestic relations court."). The panel also noted that the Separation Agreement gave

---

Bankruptcy court decisions have uniformly found hold harmless clauses to create non-dischargeable obligations. We agree with these courts and hold that payments in the nature of support need not be made directly to the spouse or dependent to be nondischargeable.

*Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1107 (6th Cir.1983) (internal citations omitted). Immediately before this passage, the *Calhoun* court quoted with approval a passage from a Second Circuit opinion that made no mention of an indemnification requirement. *See id.* at 1106–07 (quoting *In re Spong*, 661 F.2d 6, 10 (2d Cir.1981)).

the plaintiff "a new right to payment and related enforcement rights." *Id.* at 205. For these reasons, the panel concluded that the debt in question satisfied § 523(a)(15)'s qualifying language, "notwithstanding that the debt is payable to a third party and the Separation Agreement lacks hold harmless or other indemnification language." *Id.; accord Melton v. Melton (In re Melton),* 228 B.R. 641, 645 (Bankr.N.D.Ohio 1998).

 As in Ohio, Tennessee courts may incorporate into a judgment of divorce, by reference or by their specific terms, all or a portion of a marital dissolution agreement. *See Brewer v. Brewer,* 869 S.W.2d 928, 932 (Tenn.Ct.App.1993). The marital dissolution agreement then merges into the decree and may be enforced by the trial court. *See id.; see also Vick v. Vick,* No. 02A01–9802–CH–00051, 1999 WL 398115 (Tenn.Ct.App. June 16, 1999); *Ely v. Ely,* No. 03A01–9707–CH–00255, 1998 WL 2510 (Tenn.Ct.App. Jan.6, 1998). In addition, a marital dissolution agreement imposes standard contract duties of "good faith and fair dealing in its performance and enforcement, and there is an implied undertaking on the part of each party that nothing will be intentionally done which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Posner v. Posner,* No. 02A01–9710–CV–00249, 1997 WL 796216, at *3 (Tenn.Ct.App. Dec.30, 1997).

The court is persuaded that *Gibson* is the better-reasoned decision and will therefore not follow its prior holding in

*LaRue.* The court concludes that under Tennessee law, the MDA merged into the October 27, 1998 Final Decree of Divorce; that the Final Decree of Divorce imposed an additional obligation on the Debtor in favor of the Plaintiff to pay the parties' three joint obligations; and that the Plaintiff, under Tennessee law, obtained a new right to payment of the joint debts enforceable by the state court under the Final Decree of Divorce.

## IV

 The Sixth Circuit has provided a framework for analyzing whether a former spouse's assumption of marital debt, not designated as "alimony, maintenance, or support," can nonetheless be a support obligation non-dischargeable under § 523(a)(5). *See Long v. Calhoun (In re Calhoun),* 715 F.2d 1103 (6th Cir.1983). First, the bankruptcy court must determine whether the state court and the parties intended the obligation to be in the nature of support. *See id.* at 1109. "In making this determination the bankruptcy court may consider any relevant evidence including those factors utilized by state courts to make a factual determination of intent to create support." *Id.*[5] If the court determines that the state court and the parties did not intend for the obligation to be in the nature of support, its § 523(a)(5) inquiry is at an end. *See id.*

 Factors particularly relevant to this proceeding are the structure and language of the MDA and the nature of the obligations assumed. The structure and

---

5. The state court factors include:
 [T]he nature of the obligations assumed (provision of daily necessities indicates support); the structure and language of the parties' agreement or the court's decree; whether other lump sum or periodic payments were also provided; length of the marriage; the existence of children from the marriage; relative earning powers of the parties; age, health and work skills of the parties; the adequacy of support absent the debt assumption; and evidence of negotiation or other understandings as to the intended purpose of the assumption.
 *Calhoun,* 715 F.2d at 1108 n. 7.

language of the MDA are inconclusive. Paragraph 4 ambiguously states that "each party's responsibility for payment of certain debts and liabilities ... [is] part of the final financial support settlement for both parties," thereby referring to assumptions both as "support" and as part of a "settlement." By comparison, paragraph 2 terms the MDA "a full, final and complete settlement of the property, marital and other rights of the parties hereto," further suggesting that the Marital Debt assumption is merely a component of the parties' property settlement. In paragraphs 2 and 20, both spouses expressly waive all claims for alimony.

The *Calhoun* court noted that the assumption of a debt providing daily necessities indicates support. *See Calhoun,* 715 F.2d at 1108 n. 7. In contrast, the Marital Debts in the present proceeding are past consumer debts, the Debtor's payment of which does not provide daily necessities to the Plaintiff. *Calhoun* acknowledged that any assumption of marital debt provides at least indirect support in that "[t]he former spouse is relieved of payments on that debt and thus has funds for other purposes including necessary support," but that alone is insufficient to satisfy the qualifying language of § 523(a)(5). *Id.* at 1108–09.

Notwithstanding the ambiguities, the court is persuaded that the waiver of alimony language in paragraph 20 of the MDA expresses the parties' intention that the Debtor's assumption of the three disputed joint debts not be in the nature of support. Both parties were represented by counsel throughout the divorce proceedings who agreed on behalf of the Plaintiff and Debtor to the alimony waiver language.

In summary, the Plaintiff has failed to demonstrate that the Debtor's assumption of the Marital Debts was intended to be in the nature of alimony, maintenance, or support as required by § 523(a)(5). The court finds that the debt assumption was instead intended as a component of the parties' overall property settlement. With this finding, the court's § 523(a)(5) inquiry is at an end. *See id.* at 1109.

## V

Section 523(a)(15) provides that a debtor is not discharged from a marital debt that is not in the nature of alimony, maintenance, or support unless the debtor is unable to pay the debt or the benefit to the debtor of discharging the debt outweighs the detriment to the former spouse. 11 U.S.C.A. § 523(a)(15); *see also Patterson v. Patterson (In re Patterson),* 132 F.3d 33, 1997 WL 745501, at *2 (6th Cir.1997). As discussed, the Plaintiff bears the burden of proving that the Marital Debts are not of the kind described in § 523(a)(5) and that they were incurred by the Debtor "in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record." *See Armstrong v. Armstrong (In re Armstrong),* 205 B.R. 386, 391 (Bankr. W.D.Tenn.1996). As the court has already found the Marital Debts not to be in the nature of alimony, maintenance, or support, and as the debts clearly were incurred "in the course of a divorce" and "in connection with a divorce decree," the Plaintiff has met her burden. The responsibility now shifts to the Debtor to prove that he is unable to pay the debts or that the benefit to him of discharging the debts would outweigh the resulting detriment to the Plaintiff. *See id.*

### A. Ability to Pay Test

The Debtor's ability to repay the Marital Debts should be considered as of the date of trial, taking into account both present income and prospective earning capacity. *See id.; In re Smither,* 194

B.R. 102, 107 (Bankr.W.D.Ky.1996). A debtor is able to repay a § 523(a)(15) obligation if he "has sufficient disposable income to pay all or a material part of a debt within a reasonable amount of time." *Armstrong*, 205 B.R. at 392. If a debtor has remarried, the new spouse's income should be included in the disposable income calculation. *Id.*

▮▮▮ The Debtor's schedules show, at the time of filing, monthly income of $2,232.86 and monthly expenses of $2,560.24. The Debtor testified at trial that his take-home pay at the time of filing was actually higher (approximately $600.00 per week, which equals approximately $2,600.00 per month), and that his current income is nearly the same. No evidence was presented regarding any changes in the Debtor's monthly expenses. The Debtor testified that he has remarried and that his current wife earned $4,000.00 in the last quarter. No evidence was presented to show that the current wife has substantial monthly expenses beyond those scheduled by the Debtor. The Debtor further testified that he recently received a $937.00 tax refund.

Additionally, the Debtor's schedules reveal that he has income sufficient to support $100.00 in monthly recreation expenses, a $100.00 monthly phone bill, $100.00 in monthly storage fees, $50.00 per month in "personal care" expenses, and a $59.00 monthly cable bill. While not direct-ly addressing the reasonableness or necessity of any individual expenditure, the court notes the existence of an opportunity for a certain degree of belt-tightening by the Debtor.

According to the Debtor's schedules, the Discover Card and Household Credit Service debts totaled $4,225.98 as of the date of filing. Based on the income and expenses revealed by the Debtor's schedules and testimony, he has failed to demonstrate the inability to pay this amount over a reasonable period of time. Accordingly, the Debtor may not use § 523(a)(15)(A) as a defense to the Plaintiff's non-dischargeability Complaint.

## B. Balancing of Detriments Test

▮▮▮ Section 523(a)(15)(B) requires that courts compare each party's financial condition and relative standard of living to "determine the true benefit of the debtor's possible discharge against any hardship the former spouse ... would suffer as a result of a discharge." *Patterson*, 132 F.3d 33, 1997 WL 745501, at *3. The debt should be discharged under § 523(a)(15)(B) only if a debtor's standard of living will fall "materially" below the non-debtor spouse's standard of living if the debt is not discharged. *Id.*, at *3 n. 1 (citing *Smither*, 194 B.R. at 111).[6]

▮▮▮ The parties enjoyed similar incomes at the time of their divorce but the

---

6. The following non-exclusive list of factors is useful in balancing the potential detriment to each party:
 1. The amount of debt and payment terms;
 2. All parties' and spouses' current income;
 3. All parties' and spouses' current expenses;
 4. All parties' and spouses' current assets;
 5. All parties' and spouses' current liabilities;
 6. Parties' and spouses' health, job training, education, age, and job skills;
 7. Dependents and their ages and special needs;
 8. Changes in financial conditions since divorce;
 9. Amount of debt to be discharged;
 10. If objecting creditor is eligible for relief under the Code; and
 11. Whether the parties have acted in good faith in filing bankruptcy and in litigation of § 523(a)(15).
*Patterson*, 132 F.3d 33, 1997 WL 745501, at *3 n. 1 (citing *Smither*, 194 B.R. at 111).

Plaintiff is now on disability and receives only $1,200.00 per month, substantially less than the present combined income of the Debtor and his current wife. The Debtor introduced no evidence concerning the Plaintiff's monthly expenses or prospects for increased future income.

The Debtor did assert that the Plaintiff has two certificates of deposit in reserve which could be used to pay the debts at issue.[7] However, he also testified—perhaps fatally—that he and the Plaintiff were equally able to pay the disputed debts.

The Debtor has failed to demonstrate that the discharge of the Marital Debts would result in a benefit to him that would outweigh the hardship that the Plaintiff would encounter as a result of the discharge. He therefore may not employ § 523(a)(15)(B) as a shield to permit the discharge of the disputed debts.

### VI

For the reasons stated herein, the Plaintiff's Complaint to Determine Dischargeability of Debt will be sustained to the extent the Plaintiff seeks to have the Marital Debts declared non-dischargeable under 11 U.S.C.A. § 523(a)(15). A judgment consistent with this Memorandum will be entered.

---

**7.** The Debtor offered no proof in support of this unsubstantiated assertion.