State of ALABAMA DEPARTMENT
OF HUMAN RESOURCES,
Appellant,

v.

Clyde Eli LEWIS, Appellee.

No. CIV.A. 01–0812–CGM.

United States District Court,
S.D. Alabama,
Northern Division.

May 14, 2002.

James E. Long, Montgomery, AL, G. Wayne Ashbee, Mobile, AL, for appellant.

John A. Lockett, Jr., Selma, AL, for appellee.

John C. McAleer, III, Mobile, AL, trustee, pro se.

### MEMORANDUM OPINION AND ORDER

GRANADE, District Judge.

This case is before the court on appeal from a decision of the United States Bankruptcy Court for the Southern District of Alabama, Case No. 97–14379. On September 19, 2001, the bankruptcy court issued an order denying the motion of the State of Alabama Department of Human Resources ("DHR" or "the State") to set aside the bankruptcy court's May 23, 2001, order, in which the State was held in contempt of the bankruptcy court and found to be in violation of the automatic stay imposed in debtor's Chapter 13 bankruptcy proceedings. On September 27, 2001, the State filed this appeal of both the May 23 and September 19, 2001 orders.

For the reasons stated below, the court concludes that the bankruptcy court's order is due to be reversed.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On December 4, 1997, appellee Clyde Eli Lewis initiated Chapter 13 bankruptcy proceedings. (Bankruptcy file, Doc. 1.) With no action or approval from the State, appellee listed the Department of Human Resources as a creditor holding an unsecured nonpriority claim in the amount of $3,000, representing delinquent child support. *Id.* Appellee's Chapter 13 plan included payment of 100% of the child support arrearage. (Bankruptcy file, Doc. 2.) The plan was confirmed on March 4, 1998. (Bankruptcy file, Doc. 8.) The State did not file a claim or otherwise make an appearance in appellee's bankruptcy proceedings. The precise date is not clear from the record, but at some point in 2000 or 2001, the State garnished appellee's wages and began collecting the child support arrearage through weekly deductions of $76.47 from appellee's salary. (Doc. 2, Bankruptcy file, Doc. 12.) Appellee's child reached the age of majority on February 11, 2001. On March 22, 2001, appellee's counsel wrote the State, noted the pending bankruptcy and payment plan, and asked the State to release the garnishment of appellee's wages. (Bankruptcy file, Doc. 12.) The garnishment was not released. On April 26, 2001, appellee moved the bank-

ruptcy court to hold the State in contempt for violating the automatic stay, 11 U.S.C. § 362(a)(1) and (6), and to award compensatory and punitive damages, as well as sanctions and attorney's fees against the State.

On May 10, 2001, the bankruptcy court convened a hearing on appellee's motion to hold the State in contempt. The State did not appear at the hearing. The bankruptcy court's May 23, 2001, order found DHR in contempt of court for violating the automatic stay; ordered the state's garnishment of appellee's wages terminated; ordered the State to refund all money garnished after February 11, 2001; ordered the state to compensate the appellee $160 for lost wages for attending court; and ordered the State to pay appellee's attorney's fees in the amount of $500. (Bankruptcy file, Doc. 14.)

The State filed a motion to set aside judgment on August 16, 2001. The State's motion noted that the State had not filed a proof of claim or otherwise waived sovereign immunity in the bankruptcy proceeding. The State further asserted its immunity pursuant to the Eleventh Amendment and requested that the contempt order be set aside. (Bankruptcy file, Doc. 15.)

The bankruptcy court denied the motion in an order dated September 19, 2001. After noting the facts and procedural posture, the order included the following rationale:

> DHR asserts that the action against DHR for violation of the automatic stay was barred by the Eleventh Amendment of the United States Constitution. The Eleventh Amendment provides:
>
>> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of

another State, or by Citizens or Subjects of a Foreign State.

DHR claims that Eleventh Amendment immunity is a jurisdiction bar to a suit against an unconsenting state in federal bankruptcy court. There is a split of authority as to whether the states abrogated Eleventh Amendment immunity as to bankruptcy matters when they agreed to Article I, Section 8, in which Congress is given the power to establish uniform bankruptcy laws. Numerous courts have applied the sovereign immunity doctrine in the bankruptcy context. *See, e.g., Arecibo Community Health Care, Inc. v. Commonwealth of Puerto Rico,* 244 F.3d 241 (1st Cir.2001); *NVR Homes Inc., v. Clerks of Circuit Courts for Anne Arundel County, Md., (In re NVR., LP),* 189 F.3d 442 (4th Cir.1999); *Sacred Heart Hospital v. Commonwealth of Pennsylvania, (In re Sacred Heart Hospital),* 133 F.3d 237 (3d Cir. 1998); *In re Service Merchandise Co., Inc.,* [265 B.R. 917], 2001 WL 951316 (M.D.Tenn. June 15, 2001); *Peterson v. State of Florida (In re Peterson),* 254 B.R. 740 (Bankr.N.D.Ill.2000); *Seay v. Tennessee Student Assistance Corp. (In re Seay),* 244 B.R. 112 (Bankr.E.D.Tenn. 2000); *In re Womack,* 253 B.R. 241 (Bankr.E.D.Ark.2000); *Scarborough v. Michigan Collection Div. (In re Scarborough),* 229 B.R. 145 (Bankr. W.D.Mich.1999); and *Pitts v. Ohio Dep't of Taxation (In re Pitts),* 241 B.R. 862 (Bankr.N.D.Ohio 1999). Other courts have held that states may not assert the defense of sovereign immunity in bankruptcy cases. *See, e.g. Hood v. Tennessee Student Assistance Corp., (In re Hood),* 262 B.R. 412 (6th Cir. BAP 2001); *H.J. Wilson Co., Inc. v. Comm'r of Revenue for the Commonwealth of Massachusetts (In re Service Merchandise Co., Inc.),* 262 B.R. 436 (Bankr. W.D.Wis.2000); *Lees v. Tennessee Stu-*

*dent Assistance Corp. (In re Lees)*, 252 B.R. 441 (Bankr.W.D.Tenn.2000); *Bliemeister v. Industrial Comm'n of Ariz. (In re Bliemeister)*, 251 B.R. 383 (Bankr.D.Ariz.2000); *Willis v. Oklahoma (In re Willis)*, 230 B.R. 619 (Bankr.E.D.Okla.1999); *Wyoming Dept. of Transp. v. Straight (In re Straight)*, 209 B.R. 540 (D.Wyo.1997). The Eleventh Circuit discussed but did not decide the issue in *In re Burke*, 146 F.3d 1313 (11th Cir.1998). The *Burke* court stated that it "need not resolve this abrogation issue because ... we conclude in this case the State waived its sovereign immunity." *Id.* at 1317.

This court finds the cases that hold that Eleventh Amendment immunity is abrogated to be more persuasive. This court agrees with the reasoning of the recent Sixth Circuit Bankruptcy Appellate Panel decision of *In re Hood*, 262 B.R. 412 (6th Cir. BAP 2001); *see also* Leonard Gerson, *A Bankruptcy Exception to Eleventh Amendment Immunity; Limiting the Seminole Tribe Doctrine*, 74 AM.BANKR.L.J. 1, 11 (2000)("[A]t the inception of the Constitution, it was recognized that bankruptcy law required a subordination of state sovereignty.") The bankruptcy clause in Article I gives Congress the power to establish uniform laws on the subject of bankruptcy throughout the United States. U.S. CONST. art. 1, § 8, cl.r. Uniformity and state sovereignty are incompatible. "Subordinating bankruptcy laws to the sovereignty of the States would permit the States to use their power and sovereignty to collect any debt..." *In re Hood*, at 419. "It would thus permit the States to ignore the bankruptcy process..." *Id.* This court finds that the states ceded their sover-

eignty over bankruptcy matters and are not immune from suit in this court. (Bankruptcy file, Doc. 17.) The court further concluded that there was no basis under Fed.R.Civ.P. 60(b) to set aside its order. The State filed its notice of appeal on September 27, 2001. (Bankruptcy file, Doc. 18.)

## II. STATEMENT OF JURISDICTION AND STANDARD OF REVIEW

### A. Jurisdiction

■ Section 1334(a) of Title 28, United States Code, vests "original and exclusive jurisdiction of all cases under title 11"—the bankruptcy code—in the federal district courts. Title 28 U.S.C. § 157 provides that "bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising title 11...." Core proceedings are subject to appeal in the district courts pursuant to 28 U.S.C. § 158(a).[1] "The entry of a contempt order for violation of the automatic stay provisions of section 362(a) is a final appealable order in a core proceeding." *In re Ellis*, 66 B.R. 821, 823 (N.D.Ill.1986), *citing* 28 U.S.C. § 157(b)(1); 11 U.S.C. § 105; *In the Matter of Carmen Crum*, 55 B.R. 455, 458 (Bankr.M.D.Fla.1985), *In re Indus. Tool Distributors*, 55 B.R. 746, 749 (N.D.Ga.1985), and *Better Homes of Virginia, Inc. v. Budget Service Co.*, 52 B.R. 426 (E.D.Va.1985).

### B. Timeliness of Appeal

■ As an initial matter, the court must determine whether this appeal was timely filed. Bankruptcy Rule 8002 provides that "[t]he notice of appeal shall be filed with the clerk within 10 days of the date of the entry of the judgment, order, or decree appealed from." F.R.B.P.

---

1. "The district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees." 28 U.S.C. § 158 (West 2002).

8002(a) (West 2002). Moreover, the lack of a timely notice of appeal divests a district court of jurisdiction over a bankruptcy appeal. *See In re Williams*, 216 F.3d 1295, 1297 (11th Cir.2000).

▮▮▮ The bankruptcy court entered the contempt order against the State on May 23, 2001. (Doc. 14.) The State of Alabama Department of Human Resources did not appeal that order within 10 days. In fact, the State made no appearance until August 16, 2001, eighty-five days after the contempt order was entered, when the State filed a motion to set aside the contempt order. Although no basis for the motion was cited, the State apparently filed its motion under Bankruptcy Rule 9024 for relief from judgment or order. The rule states,

> Rule 60 F.R.Civ.P. applies in cases under the Code except that (1) a motion to reopen a case under the Code or for the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest is not subject to the one year limitation prescribed in Rule 60(b), (2) a complaint to revoke a discharge in a chapter 7 liquidation case may be filed only within the time allowed by § 727(e) of the Code, and (3) a complaint to revoke an order confirming a plan may be filed only within the time allowed by § 1144, § 1230, or § 1330.

F.R.B.P. 9024 (West 2002). Thus, the State's motion for relief from the contempt order on Eleventh Amendment grounds was in substance a FED.R.CIV.P. 60(b)(4) order, which allows a court, on motion of the party to grant relief from a "final judgment, order, or proceeding," where the judgment is void. *See* FED.R.CIV.P. 60(b)(4) (West 2002). "A void judgment is one which, from its inception, was a complete nullity and without legal effect." *Lubben v. Selective Service System Local Bd. No. 27*, 453 F.2d 645, 649 (1st Cir.

1972). And as the Eleventh Circuit has noted, there is no time limitation on Rule 60(b)(4) motions:

> Rule 60(b)(4) is the appropriate vehicle by which to attack jurisdictional defects of purported judgments. 11 WRIGHT & MILLER, Federal Practice and Procedure § 2862 at 200 (1973) [hereinafter WRIGHT & MILLER]. According to Professors Wright and Miller, the time within which a Rule 60(b)(4) motion may be brought is not constrained by reasonableness. *Id.* at 197–98 (reasonable time limitation "cannot be enforced with regard to this class of motion"). [FN8] This is the express position taken by the First, Fifth, Seventh, Tenth, and D.C. Circuits. *See Precision Etchings & Findings, Inc. v. LGP Gem, Ltd.*, 953 F.2d 21, 23 (1st Cir.1992); *Briley v. Hidalgo*, 981 F.2d 246, 249 (5th Cir. 1993); *Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind*, 841 F.2d 646, 649 (5th Cir.1988); *Rodd v. Region Constr. Co.*, 783 F.2d 89, 91 (7th Cir. 1986) ("[T]he reasonable time criterion of Rule 60(b) as it relates to void judgments means no time limit."); *V.T.A., Inc. v. Airco, Inc.*, 597 F.2d 220, 224 (10th Cir.1979) (no time restrictions on a Rule 60(b)(4) motion); *Misco Leasing, Inc. v. Vaughn*, 450 F.2d 257 (10th Cir. 1971) (same); *Austin v. Smith*, 312 F.2d 337, 343 (D.C.Cir.1962) (same). Our circuit has been less explicit, but has indicated acceptance of this position. *Battle v. Liberty Nat'l Life Ins. Co.*, 974 F.2d 1279 (11th Cir.1992) (per curiam), *aff'g*, 770 F.Supp. 1499, 1511–12 (M.D.Ala. 1991) (reasonable time limitation inapplicable to a 60(b)(4) challenge), cert. denied, 509 U.S. 906, 113 S.Ct. 2999, 125 L.Ed.2d 692 (1993).

---

FN8. Professor Moore is only in slight disagreement. Although Moore concedes that the " 'reasonable time' limitation must gener-

ally mean no time limit," he suggests that "there may be exceptional situations where the reasonable time limitation would require diligence on the part of the movant." 7 MOORE'S FEDERAL PRACTICE ¶ 60.25[4] at 242 (2D ED.1993) (emphasis added). Hertz's actions do not implicate this narrow exception.

Both WRIGHT & MILLER and MOORE'S agree that the principle of laches does not operate as a bar to a Rule 60(b)(4) motion. 11 WRIGHT & MILLER § 2862 at 197–98; 7 MOORE'S FEDERAL PRACTICE ¶ 60.25[4] at 242. There is no case law to the contrary. *Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind*, 841 F.2d 646, 649 n. 6 (5th Cir.1988) (correctly observing that "no court has denied relief under Rule 60(b)(4) because of delay") (emphasis added); *see, e.g., Crosby v. Bradstreet Co.*, 312 F.2d 483 (2d Cir.) (vacating void judgment 30 years after entry), cert. denied, 373 U.S. 911, 83 S.Ct. 1300, 10 L.Ed.2d 412 (1963); *Kao Hwa Shipping Co. v. China Steel Corp.*, 816 F.Supp. 910, 913 (S.D.N.Y.1993) (laches does not apply); *Taft v. Donellan Jerome, Inc.*, 407 F.2d 807, 808 (7th Cir.1969) (entertaining challenge to jurisdiction 13 years after final judgment); *Pacurar v. Hernly*, 611 F.2d 179, 180–81 (7th Cir.1979) (permitting a challenge by a plaintiff 15 months after he became aware of a default judgment entered against him) [FN9]; *In re Center Wholesale*, 759 F.2d 1440, 1447 (9th Cir.1985) ("[A] void judgment cannot acquire validity because of laches."); Austin v. Smith, 312 F.2d 337, 343 (D.C.Cir.1962) (laches never applies, even if delay is five years); *Battle v. Liberty Nat'l Life Ins. Co.*, 974 F.2d 1279 (11th Cir.1992) (per curiam), aff'g, 770 F.Supp. 1499, 1511–12 (M.D.Ala.1991) (laches inapplicable to a 60(b)(4) challenge, even if made 13 years after judgment), cert. denied, 509 U.S. 906, 113 S.Ct. 2999, 125 L.Ed.2d 692 (1993). The Supreme Court has stated, regarding a federal court's acquisition of subject-matter jurisdiction, that "the consent of the parties is irrelevant, principles of estoppel do not apply, and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings." *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982) (citations omitted); see also *Latin American Property & Casualty Ins. Co. v. Hi-Lift Marina, Inc.*, 887 F.2d 1477, 1479 (11th Cir.1989) ("Subject-matter jurisdiction can never be waived."); accord Fed.R.Civ.P. 12(h). Although "[t]ime touches defective decrees," it can give them "no vital force." *Payne v. Consolidation Coal Co.*, 538 F.Supp. 950, 955 (W.D.Va.1982) (quoting *Howe v. Howe*, 179 Va. 111, 18 S.E.2d 294, 300 (1942)). Hertz's nine month delay in invoking Rule 60(b)(4), therefore, does not defeat its motion.

*Hertz Corp. v. Alamo Rent–A–Car*, 16 F.3d 1126, 1130–31 (11th Cir.1994). Thus, the court concludes that notwithstanding the 85 day which lapsed after entry of the contempt order, the State's motion to set aside the contempt order was properly before the bankruptcy court. Finally, the State filed its notice of appeal on September 27, 2001, within 10 days of bankruptcy court's September 19, 2001 order denying the motion to set aside the contempt order. In sum, this appeal is timely under Bankruptcy Rule 8002(a).

## C. STANDARD OF REVIEW

█ In an appeal of a bankruptcy court decision, the district court sits as an appellate court and thus applies the clearly erroneous standard to the bankruptcy court's findings of fact but reviews the court's conclusions of law on a

de novo basis. Fed.R.Bankr.Proc. 8013; *In re Club Associates*, 956 F.2d 1065, 1069 (11th Cir.1992). The district court, sitting as an appellate court, does not make independent factual findings. *Id.*

*In re Williamson*, 15 F.3d 1037, 1038 (11th Cir.1994).

## III. ANALYSIS

■ This appeal presents a conflict between a statutory provision passed pursuant to Article I, § 8, clause 4 of the Constitution, which empowers Congress "[t]o establish ... uniform Laws on subject of Bankruptcies throughout the United States", and the Eleventh Amendment to the Constitution, which mandates that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign state." U.S. CONST. Art. 1, § 8, cl. 4, and Amend. XI.[2] The State argues that it never waived its Eleventh Amendment sovereign immunity and that the bankruptcy court thus had no jurisdiction over it. In its contempt order, the bankruptcy court concluded that the several states waived their sovereignty over bankruptcy when they ratified the Constitution.

The bankruptcy court's decision was based largely on the rationale of Sixth Circuit Bankruptcy Appellate Panel in *In re Hood*, 262 B.R. 412 (6th Cir. BAP 2001). In *Hood*, a Chapter 7 debtor sought discharge or her student loans on the grounds of undue hardship. The Tennessee Student Assistance Corporation filed a motion to dismiss on sovereign immunity grounds. The bankruptcy court denied the motion, holding that "11 U.S.C. § 106 properly abrogated TSAC's sovereign immunity." *Id.*, at 414. The Bankruptcy Appellate Panel affirmed, holding that "as a part of the plan of the Constitutional Convention, the States ceded to Congress their sovereignty over bankruptcy discharge matters." *Id.*, at 413. The *Hood* Court based its rationale on a survey of historical evidence. After addressing several Supreme Court precedents, the *Hood* Court stated,

> In any event, the issue of the States' need to comply with bankruptcy claims procedures was put to rest in the recent case of *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000). Importantly, the Supreme Court decided this case after *Seminole Tribe* [and its progeny]. The specific question *Raleigh* involved the burden of proof on a contested proof of claim *filed by the State in bankruptcy*

**2.** As the bankruptcy court noted, the Eleventh Circuit has identified but not reached the issue before this court in *In re Burke*, 146 F.3d 1313, 1317 (11th Cir.1998): "[W]e need not resolve this abrogation issue because assuming *arguendo* that the State of Georgia has Eleventh Amendment immunity and it has not been validly abrogated by § 106(a), we conclude that in this case the State waived its sovereign immunity by filing a proof of claim in the debtors' bankruptcy proceedings."

A state may waive sovereign immunity and consent to suit in federal court. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985), citing *Clark v. Barnard*, 108 U.S. 436, 447, 2 S.Ct.

878, 27 L.Ed. 780 (1883). But in contrast to the State of Georgia in *In re Burke*, the State of Alabama did not file a claim in this case or otherwise waive sovereign immunity. Rather, the debtor's counsel filed a claim on behalf of the State of Alabama Department of Human Resources. *See* Bankruptcy file Doc. 1 (bankruptcy petition), schedule F, and transcript of September 6, 2001, hearing on State's motion to set aside bankruptcy court's order of (May 23, 2001, at 2.) The State made its first appearance in this case on August 16, 2001, when it asserted sovereign immunity and moved for the contempt order to be set aside. Bankruptcy file, Doc. 15.

*court.* In the course of its opinion holding that this burden is the same in bankruptcy as it would be outside of bankruptcy, the Court stated, "[F]ederal law has generally evolved to impose the same procedural requirements for claim submission on tax authorities as on other creditors[.]" 530 U.S. at 24[, 120 S.Ct. 1951]. The significant of this case is that even after *Seminole Tribe* and its progeny, the Court has considered that the States are fully subject to the bankruptcy process, including the claims process and the automatic stay.

*Hood,* 262 B.R. at 421 (emphasis added).³ Relying on *In re Hood,* the bankruptcy court in the instant case denied the motion to set aside the contempt order and concluded, "Uniformity and state sovereignty are incompatible." (Bankruptcy file, Doc. 17.) That may be. But where uniformity and state sovereignty conflict as in this case, resolution must be in favor of the Eleventh Amendment and sovereign immunity.

The court reaches its conclusion based on the Supreme Court's rationale and holding in the landmark case of *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). In that case, the Court held in part "notwithstanding Congress' clear intent to abrogate the States' sovereign immunity, the Indian Commerce Clause does not grant Congress that power, and therefore [25 U.S.C.] § 2710(d)(7) cannot grant jurisdiction over a State that does not consent to be sued." *Seminole Tribe,* 517 U.S. at 47, 116 S.Ct. 1114.

At issue in *Seminole Tribe* was a provision of the Indian Gaming Regulatory Act, passed pursuant to the Indian Commerce Clause, Article 1, § 8, cl. 3, which "imposed upon the states a duty to negotiate in good faith an Indian tribe toward the formation of a [gaming] compact." ⁴ Title 25 U.S.C. § 2710(d)(7) conferred upon federal district courts original jurisdiction over suits initiated by Indian tribes for failure to negotiate in good faith. *Id.,* at 49–50, 116 S.Ct. 1114. When the Seminole Tribe of Florida filed suit against the State of Florida, the State moved to dismiss the complaint on the basis for Eleventh Amendment sovereign immunity. *Id.,* at 51, 116 S.Ct. 1114. The district court denied the motion, and the Eleventh Circuit reversed, holding that the suit was barred by the Eleventh Amendment. *See Seminole Tribe of Florida v. Florida,* 11 F.3d 1016, 1019 (11th Cir.1994).

In affirming the Eleventh Circuit, the Supreme Court noted the historic understanding of the scope of the Eleventh Amendment:

> Although the text of the [Eleventh] Amendment would appear to restrict only the Article III diversity jurisdiction of the federal courts, "we have understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition ... which it confirms." *Blatchford v. Native Village of Noatak,* 501 U.S. 775, 779, 111 S.Ct. 2578, 2581, 115 L.Ed.2d 686 (1991). That presupposition, first observed over a century ago in *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), has two parts: first, that each State is a sover-

---

**3.** This court rejects the Sixth Circuit Bankruptcy Appellate Panel's holding in *In re Hood* and further notes that the *Hood* Court's citation of *Raleigh* does not apply in the instant case because the State of Alabama did not file a proof of claim in the appellee's bankruptcy proceeding.

**4.** Among its enumerated powers, Congress is empowered "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. Art. 1, § 8, cl. 3.

eign entity in our federal system; and second, that " '[i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent,'" *id.*, at 13, 10 S.Ct., at 506 (emphasis deleted), quoting *The Federalist* No. 81, p. 487 (C. Rossiter ed. 1961) (A.Hamilton). *See also Puerto Rico Aqueduct and Sewer Authority[ v. Metcalf & Eddy, Inc.*, 506 U.S. 139,] 146, 113 S.Ct. 684, 121 L.Ed.2d 605 [ (1993) ]("The Amendment is rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity"). For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States "was not contemplated by the Constitution when establishing the judicial power of the United States." *Hans, supra*, at 15, 10 S.Ct. 504.

*Seminole Tribe*, at 54, 116 S.Ct. 1114, footnote omitted.[5] The Court framed the relevant analysis: "In order to determine whether Congress has abrogated the States' sovereign immunity, we ask two questions: first, whether Congress has unequivocally expressed its intent to abrogate the immunity, and second whether Congress has acted pursuant to a valid exercise of power." *Id.*, at 55, 116 S.Ct. 1114 (internal quotation marks and citations omitted). As to the first question, "Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement. This rule arises from a recognition of the important role played by the Eleventh Amendment and the broader principle that it reflects."

Although the bankruptcy court's order does not reference the statute, the contempt order appealed is implicitly based on 11 U.S.C. § 106. In that statute, Congress clearly and unequivocally stated its intent to abrogate sovereign immunity in bankruptcy matters. The statute states in part,

(a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:

(1) Sections 106... 362 ... of this title.

(2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.

---

**5.** Subsequent rulings by the Supreme Court have affirmed the "presupposition" of sovereign immunity which the Eleventh Amendment confirms. *See e.g., Kimel v. Florida Board of Regents*, 528 U.S. 62, 79, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000)("Under our firmly established precedent then, if the [Age Discrimination in Employment Act of 1967] rests solely on Congress' Article I commerce power, the private petitioners in today's cases cannot maintain their suits against their state employers."); *Alden v. Maine*, 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999)("[T]he powers delegated to Congress under Article I of the United States Constitution do not include the power to subject nonconsenting States to private suits for damages in state courts."); *Florida Prepaid Postsecondary Education Expense Board v. College Sav-*

*ings Bank*, 527 U.S. 627, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999)(Article I commerce and patent clauses provide no basis to abrogate state sovereign immunity; neither was federal patent statute subjecting states to suit "appropriate" under § 5 of the Fourteenth Amendment).

Just as the Eleventh Amendment applies to suits in federal court against a state by its own citizens, *see Hans v. Louisiana*, 134 U.S. 1, 18–19, 10 S.Ct. 504, 33 L.Ed. 842 (1890), sovereign immunity has been extended to protect state entities. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)("suit in which the State or one of its agencies or departments is named as defendant is proscribed by the Eleventh Amendment... regardless of the relief sought.")

(3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. Such order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.

(4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate non-bankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.

11 U.S.C. § 106 (West 2002). The bankruptcy court found the State of Alabama Department of Human Resources in contempt for violating the automatic stay, 11 U.S.C. § 362, a provision falling within the scope of the § 106 waiver.[6] The primary inquiry under *Seminole Tribe* is satisfied; Congress clearly stated its intent to waive sovereign immunity. The remaining question is whether 11 U.S.C. § 106—the waiver of sovereign immunity upon which the bankruptcy court's order was implicitly based—was passed "pursuant to a valid exercise of power." *Seminole Tribe*, 517

U.S. at 58, 116 S.Ct. 1114, quoting *Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985). Stated more narrowly, "Was [11 U.S.C. § 106] passed pursuant to a Constitutional provision granting Congress the power to abrogate?" *Seminole Tribe*, 517 U.S. at 58, 116 S.Ct. 1114. Based on the Supreme Court's rationale in *Seminole Tribe*, the answer is no.

First, the statutory provision at issue was not passed pursuant to § 5 of the Fourteenth Amendment, where the Supreme Court has recognized Congressional authority to abrogate state sovereign immunity.

In *Fitzpatrick [v. Bitzer*, 427 U.S. 445, 452–56, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) ], we recognized that the Fourteenth Amendment, by expanding federal power at the expense of state autonomy, had fundamentally altered the balance of state and federal power struck by the Constitution. We noted that § 1 of the Fourteenth Amendment contained provisions expressly directed at the States and that § 5 of the Amendment expressly provided that "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article." We held that through the Fourteenth Amendment, federal power extended to intrude upon the province of the Eleventh Amendment and therefore that § 5 of the Fourteenth Amendment allowed Congress to abrogate the immunity

---

**6.** "(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that

was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

... (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title....

11 U.S.C. § 362(a)(West 2002).

from suit guaranteed by that Amendment.

*Seminole Tribe,* 517 U.S. at 59, 116 S.Ct. 1114 (citations omitted). The provision at issue in this case, 11 U.S.C. § 106, was amended to its present form as part of the Bankruptcy Reform Act of 1994, H.R. 5116, Pub.Law 103–394, 108 Stat. 4106. Clearly, § 106 was passed pursuant to Congress' Article I, § 8, clause 4 enumerated power to establish "uniform Laws on subject of Bankruptcies throughout the United States" U.S. CONST. Art. 1, § 8, cl. 4.

In holding that the Indian Commerce Clause did not grant Congress the power to abrogate sovereign immunity based in the Eleventh Amendment, the *Seminole Tribe* Court overruled *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), the "only ... other case [where] congressional abrogation of the States' Eleventh Amendment immunity [had] been upheld." *Seminole Tribe,* 517 U.S. at 59, 116 S.Ct. 1114. The *Seminole* Court noted that *Union Gas* was a plurality opinion and affirmed the dissenting view in that case. "As the dissent in *Union Gas* recognized, the plurality's conclusion—that Congress could under Article I expand the scope of the federal courts' jurisdiction under Article III—'contradict[ed] our unvarying approach to Article III as setting forth the *exclusive* catalog of permissible federal court jurisdiction.'" *Id.,* at 65, 116 S.Ct. 1114 (citation omitted, emphasis in the original). The Court further noted that the Fourteenth Amendment abrogation case of *Fitzpatrick* "cannot be read to justify limitation of the principle embodied in the Eleventh Amendment through appeal to antecedent provisions of the Constitution." *Id.,* at 66, 116 S.Ct. 1114. The Court concluded,

> In overruling *Union Gas* today, we reconfirm that the background principle of state sovereign immunity embodied in the Eleventh Amendment is not so ephemeral as to dissipate when the subject of the suit is an area, like the regulation of Indian commerce, that is under the exclusive control of the Federal Government. Even when the Constitution vests in Congress complete law-making authority over a particular area, the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting states. [Footnote 16.] The Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction. Petitioner's suit against the State of Florida must be dismissed for a lack of jurisdiction.

*Seminole Tribe,* 517 U.S. at 72–73, 116 S.Ct. 1114. The supporting footnote 16 is also relevant, as it addresses the issue of bankruptcy law:

> ... [C]ontrary to the implication of Justice Stevens' [dissenting] conclusion, it has not been widely thought that the federal antitrust, bankruptcy, or copyright statutes abrogated the States' sovereign immunity. This Court has never awarded relief against a State under any of those statutory schemes.... Although the copyright and bankruptcy laws have existed practically since our Nation's inception, and the antitrust laws have been in force for over a century, there is no established tradition in the lower federal courts of allowing enforcement of those federal statutes against the States. Notably both court of Appeals decisions cited by Justice Stevens were issued last year and were based upon *Union Gas.* See *Chavez v. Arte Publico Press,* 59 F.3d 539 (C.A.5 1995); *Matter of Merchants Grain, Inc.,* 59 F.3d 630 (C.A.7 1995). Indeed while the Court of appeals in *Chavez* allowed

the suit against the State to go forward, it expressly recognized that its holding was unprecedented.

*Id.,* n. 16.[7] The Supreme Court subsequently granted *certiorari* in the bankruptcy case cited, *Matter of Merchants Grain, Inc.,* vacating the lower court's opinion and remanding for further consideration in light of *Seminole Tribe. Ohio Agr. Commodity Depositors Fund v. Mahern,* 517 U.S. 1130, 116 S.Ct. 1411, 134 L.Ed.2d 537 (1996).

Based on foregoing, this court concludes that, although Congress clearly expressed its intent to waive sovereign immunity in 11 U.S.C. § 106(a), that provision was not passed "pursuant to a valid exercise of power." *Seminole Tribe,* 517 U.S. at 58, 116 S.Ct. 1114, quoting *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985). A statutory provision passed pursuant to the bankruptcy clause in Article I, Section 8 clause 4 of the Constitution cannot trump the States' Eleventh Amendment sovereign immunity. *Seminole Tribe* compels only one conclusion: this court holds that 11 U.S.C. § 106 is unconstitutional. *Accord, In re Lush Lawns, Inc.,* 203 B.R. 418 (Bankr.N.D.Ohio 1996)(Finding 11 U.S.C. § 106 unconstitutional under *Seminole Tribe* and dismissing debtor's motion for contempt order against State of Ohio Department of Taxation for violation of automatic stay on sovereign immunity grounds.).

As a final matter, the court acknowledges the exception to Eleventh Amendment sovereign immunity established in *Ex parte Young,* 209 U.S. 123, 155–56, 28 S.Ct. 441, 52 L.Ed. 714 (1908), by which individuals may file suit against a state official seeking injunctive relief to "end a continuing violation of federal law." *Green v. Mansour,* 474 U.S., at 68, 106 S.Ct. 423. Because the plaintiff filed his motion for contempt against the Alabama Department of Human Resources and not an individual state official, this court is unable to engage in an *Ex parte Young* analysis. Bankruptcy file, Doc. 12. *See In re Claxton,* 273 B.R. 174, 185 (N.D.Ill.2002)(In Chapter 7 case, debtor's tax-related claim against the State of Illinois "failed to meet the threshold pleading requirements under *Ex parte Young.*"); *but see In re LTV Steel Co.,* 264 B.R. 455 (Bankr.N.D.Ohio 2001)(Debtor's action against individual Minnesota Department of Revenue officials for enforcement of the automatic stay and injunctive relief could proceed, notwithstanding sovereign immunity, through *Ex parte Young* exception.).

## CONCLUSION

For the reasons stated, the bankruptcy court's September 19, 2001, order denying the motion of the State of Alabama Department of Human Resources to set aside the bankruptcy court's contempt order of May 23, 2001, is **REVERSED.** The bankruptcy court's May 23, 2001, order finding the State in contempt of court for violation of the automatic stay is **VACATED.** This case is **REMANDED** to the United States Bankruptcy Court for the Southern District of Alabama for further proceedings consistent with this opinion.

**7.** The Panel in *In re Hood* rejected the Supreme Court's statement in note 16, characterizing it as *dicta* and relying instead on its survey of cases which, the *Hood* Court stated, "fully disproves the [*Seminole*] majority's statements (1) that it has not been widely thought that bankruptcy statutes abrogated the States' sovereign immunity, and (2) that there is no established tradition of allowing enforcement of bankruptcy against the states." *In re Hood,* 262 B.R. at 424. Whether note 16 constitutes *dicta* is immaterial, because the analytical framework mandated by *Seminole* compels reversal in this case.